Carolyn VITTITOW *v.* CENTRAL MALONEY, INC.

CA 99-882                                             11 S.W.3d 12

Court of Appeals of Arkansas
Division II
Opinion delivered February 23, 2000

*J. Slocum Pickell,* for appellant.

*Bridges, Young, Matthews & Drake, PLC,* by: *Michael J. Dennis,* for appellee.

SAM BIRD, Judge. Appellant Carolyn Vittitow suffered an admittedly compensable back and shoulder injury on February 4, 1997, while she was working for appellee, Central Maloney. Vittitow's injury occurred when she was emptying five-gallon buckets of water at Central Maloney's Pine Bluff facility. At a hearing before an administrative law judge, Vittitow testified that

Central Maloney's roof had numerous leaks, and when it rained, water would leak into the building. Central Maloney positioned buckets under the leaks to catch the water, but the buckets would overflow, causing the walkways and aisles to be slippery. Vittitow slipped and fell while emptying the buckets.

Central Maloney stipulated that the injury was compensable, all appropriate disability and medical benefits were paid to Vittitow, and she returned to her regular work at Central Maloney. Relying on Ark. Code Ann. § 11-9-503 (Repl. 1993), Vittitow filed a claim contending that her injury was the result of Central Maloney's violations of safety rules or regulations, that she was entitled to any and all benefits that may come to her as a result of the alleged safety violation, and that she was entitled to an attorney's fee.

The law judge ruled that Vittitow had proven that a safety violation had occurred and, pursuant to Ark. Code Ann. § 11-9-409 (Repl. 1993), referred Central Maloney to the Workers' Health and Safety Division of the Workers' Compensation Commission and awarded an attorney's fee of $500. Central Maloney appealed to the full Commission, which vacated the law judge's decision and dismissed the case.

The Commission held that under Act 796 of 1993, the Workers' Health and Safety Division (hereinafter "Division"), and not an injured worker, is the proper party to investigate and institute legal action against an employer for an alleged safety violation.

Arkansas Code Annotated section 11-9-409 establishes the Division and promulgates its responsibilities, including coordinating information relating to job safety; organizing educational material as it pertains to job safety; promoting a means by which employers and employees are educated with regard to workplace safety; and maintaining a job safety information system, which shall include a comprehensive data base incorporating information relating to each reported injury. Subsection (c) states:

> (c) EXTRA-HAZARDOUS EMPLOYER PROGRAM. (1)(A) In cooperation with and with the assistance of the Department of Labor and the State Insurance Department, the division shall develop a program, including injury frequency, to identify extra-hazardous employers. The term "extra-hazardous employer" includes an employer whose injury frequencies substantially exceed

those that may reasonably be expected in that employer's business or industry, an employer whose experience modifier is identified by the commission as too high, and such other employers as may, following a public hearing, be identified as extra-hazardous.

(B) The division shall notify each identified extra-hazardous employer or the carrier for the employer that the employer has been identified as an extra-hazardous employer.

(2)(A) An employer who receives notification under subdivision (c)(1)(B) of this section must obtain a safety consultation within thirty (30) days from the Department of Labor, the employer's insurance carrier, or another professional source approved by the division for that purpose.

(B) The safety consultant shall file a written report with the division and the employer setting out any hazardous conditions or practices identified by the safety consultation.

(3) The employer and the consultant shall formulate a specific accident prevention plan which addresses the hazards identified by the consultant. The employer shall comply with the accident prevention plan.

(4) The division may investigate accidents occurring at the work sites of an employer for whom a plan has been formulated under subdivision (c)(3) of this section, and the division may otherwise monitor the implementation of the accident prevention plan as it finds necessary.

(5)(A) Six (6) months after the formulation of an accident prevention plan prescribed by subdivision (c)(3) of this section, the division shall conduct a follow-up inspection of the employer's premises. The division may require the participation of the safety consultant who performed the initial consultation and formulated the safety plan.

(B) If the division determines that the employer has complied with the terms of the accident prevention plan or has implemented other acceptable corrective measures, the division shall so certify.

(C) An employer who the division determines has failed or refused to implement the accident prevention plan or other suitable hazard abatement measures is subject to civil penalties as follows:

(i) The commission may assess a civil penalty against an employer who fails or refuses to implement the accident prevention plan or other suitable hazard abatement procedures in an amount up to one thousand dollars ($1,000) per day of violation payable to the Death and Permanent Total Disability Trust Fund;

(ii) Further, the commission may petition the Chancery Court of Pulaski County, or of the county where the business is located, for an order enjoining the employer from engaging in further employment until such time as the employer implements the prevention plan or abatement measure described above and/or makes payment of all civil penalties.

(6) If, at the time of the inspection required under subdivision (c)(5)(A) of this section, the employer continues to exceed the injury frequencies that may reasonably be expected in that employer's business or industry, the division shall continue to monitor the safety conditions at the work site and may formulate additional safety plans reasonably calculated to abate hazards. The employer shall comply with such plans and may be subject to additional penalties for failure to implement the plan or plans.

(7) An employer may request a hearing before the Full Commission to contest findings made by the division under this section.

(8) The identification as an extra-hazardous employer under this section is not admissible in any judicial proceeding unless the commission has determined that the employer is not in compliance with this section and that determination has not been reversed or superseded at the time of the event giving rise to the judicial proceeding.

Prior to Act 796, Ark. Code Ann. § 11-9-503 (Repl. 1987) read:

Where established by clear and convincing evidence that an injury or death is caused in substantial part by the failure of an employer to comply with any Arkansas statute or official regulation pertaining to the health and safety of employees, compensation provided for by § 11-9-501(a)-(d) shall be increased by twenty-five percent (25%).

In making its decision, the Commission noted, however, that Ark. Code Ann. § 11-9-503 had been amended by Act 796 to read as follows:

> (a)(1) Notwithstanding any other definition of extra-hazardous employer as provided by § 11-9-409(c), any employer who fails to utilize the consultative safety services available through the Department of Labor, its own insurance carrier, or a private safety consultant shall be identified as an extra-hazardous employer if it is established by a preponderance of the evidence that an injury or death is caused in substantial part by the failure of the employer to comply with any Arkansas statute or official regulation pertaining to the health or safety of employees or fails to follow safety consultant recommendations.
>
> (2) When so notified, the employer shall comply with § 11-9-409(c)(2)-(8).

In holding that Vittitow lacked standing and that the law judge was without jurisdiction, the Commission relied upon the fact that Act 796 (1) created the Division and assigned to it the duty to implement the extra-hazardous employer program, (2) removed any type of monetary penalty from section 11-9-503 payable to a claimant, (3) provided for an extra-hazardous employer designation by the Division and for a penal remedy for a violation, (4) provided that one of the Division's function was to identify extra-hazardous employers, (5) limited the application of section 503 to instances in which employers have already been required, pursuant to a notice from the Division, to obtain safety consultative services according to section 11-9-409(c), but have failed to do so, and (6) provided the Division with statutory authority to investigate accidents at the work place under situations where an employer has an obligation to obtain and utilize safety consultative services, pursuant to section 11-9-409(c). Therefore, the Commission held that Vittitow did not have standing to bring, and the law judge did not have jurisdiction to hear, her complaint. Appellant brings this appeal arguing that the Commission erred in vacating the law judge's opinion and dismissing her claim. We affirm.

On appeal in workers' compensation cases, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial

evidence. *City of Blytheville v. McCormick*, 56 Ark. App. 149, 939 S.W.2d 855 (1997); *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Blytheville v. MoCormick, supra; Crossett School Dist. v. Gourley*, 50 Ark. App. 1, 899 S.W.2d 482 (1995); *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *City of Blytheville v. McCormick, supra; Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). Where a claim is denied because the claimant failed to show entitlement to compensation by the preponderance of the evidence, the substantial evidence standard of review requires us to affirm the Commission if its opinion displays a substantial basis for the denial of the relief sought. *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998).

█ The provisions of the Workers' Compensation Act were formerly construed liberally in accordance with the act's remedial purpose; however, Act 796 changed the former practice and mandated that the Commission and the courts construe the provisions strictly. *City of Blytheville v. McCormick, supra; Torrey v. City of Fort Smith*, 55 Ark. App. 226, 934 S.W.2d 237 (1996). In interpreting a statute, we construe the words just as they read and give them their ordinary meaning. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *Torrey v. City of Fort Smith, supra.* The basic rule of statutory construction is to give effect to the intent of the Legislature, making use of common sense. *Minnesota Mining & Mfg. v. Baker, supra; Torrey v. City of Fort Smith, supra.* Statutes relating to the same subject should be read in a harmonious manner. *Minnesota Mining & Mfg. v. Baker, supra; Torrey v. City of Fort Smith, supra.* All legislative acts relating to the same subject are said to be *in pari materia* and must be construed together and made to stand if they are capable of being reconciled. *Minnesota Mining & Mfg. v. Baker, supra.*

Vittitow argues that the Commission erred in finding that she lacked standing to enforce Ark. Code Ann. §§ 11-9-409 and 11-9-503. Vittitow concedes that Act 796 of 1993 "changed the way safety violation cases were treated." She argues that the changes to

the code were not intended to take an injured employee "out of the loop." She states that her "compensation" under Act 796 is not a monetary award, but peace of mind that her work place is safe. Further, she asserts that section 11-9-503 does not bar claimants from seeking redress and that this section does not give the Division exclusive authority to commence a safety violation. We disagree.

As we stated previously, Act 796 of 1993 specifically established the Division and set forth its responsibilities, which include such activities as collecting and serving as a repository for statistical information on workers' health and safety, collecting information relating to job safety, publishing and procuring educational books, pamphlets, brochures, films, videotapes, and other informational and educational material. The Division is required to establish a job safety information system, which will include information relating to each reported injury. In addition, under subsection (c)(1)(A) of the statute, titled "Extra-Hazardous Employer Program," the Division was given the authority to develop a program to identify extra-hazardous employers. It then sets out a procedure to follow when so doing. This section specifically addresses job safety and sets forth rules by which the Division shall abide. The Division is required to develop a program, including injury frequency, to identify extra-hazardous employers. The section defines the term "extra-hazardous employer" as "an employer whose injury frequencies substantially exceed those that may reasonably be expected in that employer's business or industry, an employer whose experience modifier is identified by the commission as too high, and such other employers as may, following a public hearing, be identified as extra-hazardous." *See* Ark. Code Ann. § 11-9-409(c).

Subsection (c)(1)(B) requires the Division to notify each extra-hazardous employer or its insurance carrier that the employer has been identified as an extra-hazardous employer. Subsection (c)(2)(A) mandates that an employer so notified must then obtain a safety consultation within thirty days from the Department of Labor, the employer's insurance carrier, or another professional source approved by the Division for that purpose, and pursuant to subsection (c)(2)(B), the safety consultant shall file, with the Division and the employer, a written report setting out any hazardous conditions or practices identified by the safety consultation. Under subsection (c)(3), the employer and the consultant must then for-

mulate a specific accident prevention plan, addressing the concerns identified by the consultant.

Under Subsection (c)(4), the Division may investigate accidents occurring at a work site for whom a safety plan has been formulated. Subsection (c)(5)(A) requires that six months after the formulation of an accident prevention plan, the Division conduct a follow-up inspection of the employer's premises, and the division may require the participation of the safety consultant who performed the initial consultation and formulated the safety plan.

If the Division determines that the employer has complied with the terms of the accident prevention plan or has implemented other acceptable corrective measures, then pursuant to (c)(5)(B), the Division shall so certify. However, under (c)(5)(C), an employer who the Division determines has failed or refused to implement the accident prevention plan or other suitable hazard abatement measures will be subject to civil penalties.

If at the time of an inspection, the Division makes a finding that the employer continues to exceed the injury frequencies that may reasonably be expected in the employer's business, under subsection (c)(6), the Division is required to continue to monitor the safety conditions at the work site and formulate additional safety plans.

If the employer disagrees with any of the Division's findings that it is an extra-hazardous employer or the procedures set forth to prevent such injury frequency, then under subsection (c)(7) the employer may request a hearing before the full Commission.

■ After reading sections 11-9-409 and 11-9-503 in a harmonious manner as we must, *Mining & Mfg. v. Baker, supra; Torrey v. City of Fort Smith, supra.*, we find that neither section grants Vittitow the right to bring a claim seeking to establish Central Maloney as an extra-hazardous employer. As stated at length, section 409 establishes the prerequisites for the Division's finding that an employer is an extra-hazardous employer, and it sets forth criteria by which the Division shall work with the employer to provide a safer working environment for its employees. Section 503 is supplementary to section 409 in that it sets forth the burden of proof required in which an employer may be labeled extra-hazardous. This section does not establish the right of an employee to bring a

claim against an employer before an administrative law judge to determine that an employer is an extra-hazardous employer. According to the statutes, only the Division has the authority to determine that an employer should be classified as extra-hazardous. Therefore, we hold that section 11-9-503 is not an additional remedy outside of the scope of the comprehensive Extra-hazardous Employer Program established in section 11-9-409.

■ We find it significant that, in rewriting section 503, the Legislature deleted the language from the former statute that awarded a claimant compensation for proving that a safety violation had occurred. Therefore, we hold that the Commission did not err in its finding that Vittitow lacked standing, either under Ark. Code Ann. § 11-9-409 or 503, and that the law judge did not have jurisdiction to hold an evidentiary hearing.

■ For her second point on appeal, Vittitow states that her attorney should be awarded compensation. However, she neither cites any case law or statutory authority for her argument, nor does she make a convincing argument. Arkansas Code Annotated section 11-9-716 (Repl. 1996) states that the Commission is authorized to approve lump-sum attorney's fees for legal services rendered in respect of a claim before the Commission. Because we have held that the claim was not properly before the Commission or the law judge, we will not award an attorney's fee. The statutes cited by Vittitow do not provide for an attorney's fee. In addition, Ark. Code Ann. § 11-9-715 sets forth the guidelines for awarding attorney's fees, which is a percentage of the award issued after the claim was controverted. In the case at bar, Central Maloney did not controvert the claim that Vittitow was injured. It paid all necessary medical benefits, and Vittitow returned to work. It was not until she was fully compensated for her injury that she filed a "safety-violation" claim. She is entitled to no monetary compensation. Therefore, her attorney is not entitled to a fee.

Affirmed.

JENNINGS and MEADS, JJ., agree.