James McKINNEY *v.*
TRANE COMPANY & Travelers Indemnity Company

CA 03-742                                               143 S.W.3d 581

Court of Appeals of Arkansas
Division IV
Opinion delivered January 28, 2004

Walker, Shock & Cox, PLLC, by: J. Randolph Shock, for appellant.

Hardin, Jesson & Terry, PLC, by: J. Rodney Mills, for appellees.

SAM BIRD, Judge. James McKinney appeals the denial of his workers' compensation claim for an injury to his left knee. The injury, sustained in the workplace on December 14, 2001, required medical treatment and ultimately resulted in surgery. The Workers' Compensation Commission affirmed and adopted the decision of the administrative law judge, which denied his claim on the following basis:

> [T]he claimant was not performing employment services at the time he chose to jump over the tube sheeting to retrieve his soda so that he could go on his smoke break. This jump and landing which injured the claimant's left knee did not occur at a time when the claimant was advancing the respondent's interests or performing employment activities.

McKinney contends that the Commission erred in determining that he was not performing employment services at the time of his injury. We affirm the decision of the Commission.

McKinney testified that he was a union employee working as a sheet-metal fabricator under a full-time contract of hire pursuant to a union contract with appellee Trane Company. He testified that on the date of the injury he was working in the coil shop, and that a co-worker came to get him to go on his last break about five or six minutes before the break. He walked to the break table to get his cigarettes and turned around to go outside, but he

decided instead to go back to get a soda he had left on the break table. He took the most direct route by leaping over tube sheet buckets instead of going all the way around, and he landed on the floor on a pile of aluminum fins that he had not seen before leaping. His leg slipped, and his knee was injured. He testified that the setup of the department where the buckets were located had been changed from the time that he had been there previously, which was probably more than a month earlier. On the day after his injury, the company posted a "lost-time injury notice" stating that there should be no jumping or running in the facility.

McKinney testified that he was pinning coils until his co-worker came to get him for break, at which time he removed his apron, gloves, and safety glasses, putting his equipment on the table. He said that if he had gotten his soda and had not fallen, he would have gone outside to smoke on his break. He said that although he would not have been pinning coils on break, he would have been under a duty to report anything askew in the workplace had he observed it during that time. He said that the break gave employees an opportunity to go to the restroom, to smoke, or to refresh themselves with a drink. He explained that this was a scheduled ten-minute break under the union contract of employment, and that almost everyone in the plant was on break at the same time.

■ A compensable injury is defined, in part, as an accidental injury "arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2003). A compensable injury does not include an injury "inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii). In *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998), we held that the claim was not compensable because employment services were not being performed when Harding tripped over a rolled-up carpet on her way to a designated smoking area in the workplace. We rejected her argument that the break advanced her employer's interest by allowing her to relax and to work more efficiently. We observed that an employee's injury sustained en route to a break area would have been in the course of employment under prior law and the personal-comfort doctrine, but that Act 796 of 1993 excluded from the definition of "compensable injury" any injury inflicted upon an employee while the worker was not performing employment services.

■ In *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002), a truck driver was injured while returning to his truck after using the restroom during a break. The supreme court, stating that it had not directly addressed the personal-comfort doctrine since the enactment of Act 796, refused to automatically accept or reject the doctrine. Instead, the court said that the critical issue was whether the employer's interests were being advanced directly or indirectly by the claimant at the time of the injury. The *Pifer* court wrote the following:

> Since 1993, we have twice been called upon to construe the statutory language found in sections 11-9-102(4)(A)(i) and 11-9-102(4)(B)(iii). *See White v. Geogia-Pacific Corp., supra,* and *Olsten Kimberly Quality Care, supra.* We have held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer. . . ." *White v. Georgia-Pacific Corp.,* 339 Ark. at 478, 6 S.W.3d at 100. We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *White v. Georgia-Pacific Corp., supra; Olsten Kimberley, supra.* The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *White v. Georgia-Pacific Corp.,* 339 Ark. at 478, 6 S.W.3d at 100 and *Olsten Kimberly, supra.*

347 Ark. at 856-57, 69 S.W.3d at 3-4. Pifer's claim was held to be compensable on the finding that the restroom break was a necessary function that directly or indirectly advanced the employer's interests.[1]

McKinney, arguing that a claim is not precluded merely because an employee was engaged in an act of a personal nature at the time of injury, contends that the Commission erred in analyzing his claim under *Harding v. City of Texarkana, supra.* He points instead to the "critical issue" set forth in *Pifer* as to whether the employer's interests were being advanced directly or indirectly by the employee at the time of the injury. McKinney proposes that the performance of a contract of employment is "by definition"

---

[1] Similarly, in *Collins v. Excel Specialty Products,* 347 Ark. 811, 69 S.W.3d 14 (2002), the supreme court held that the claimant's restroom break was a necessary function and directly or indirectly advanced the interests of her employer.

performance of employment services because the contract, including in this case the paid break as a condition of contract, directly benefits his employer. The respondents contend that adoption of McKinney's argument would extend workers' compensation coverage to other activity allowed under an employment contract, such as paid vacations. Further, respondents argue that this case is distinguishable from those in which workplace injuries were sustained while employment services were being performed. We agree with the respondents.

In *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999), which was quoted extensively and with approval by the *Pifer* court, a claimant on break was injured while on his way to smoke in an area where he could keep an eye on equipment in his work station and could immediately return if necessary. The *White* court held that the claim, although not compensable under the personal-comfort doctrine, was compensable because employment services were being performed at the time of the injury. The supreme court wrote:

> The court of appeals has held that when an employee is doing something that is generally required by his or her employer, the claimant is providing employment services. *See Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999); *Shults v. Pulaski County Special Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 339 (1998).

> In the present matter, Georgia-Pacific argues that White was on a personal break and not performing any employment services; thus, his injury is not compensable. This argument ignores the fact that someone had to monitor the dryers, whether it be White or a relief worker. Because there was no relief worker provided, White was forced to remain near his immediate work area in order to monitor those machines. If one of the dryers needed to be loaded or his supervisor needed him for some reason, White would have been forced to return to his forklift immediately. Georgia-Pacific's argument also ignores the fact that White's supervisor instructed him to take a break "when he could."

> We believe the present situation is analogous to the facts presented in *Ray*, 66 Ark. App. 177, 990 S.W.2d 558. In *Ray*, appellant was employed by the University of Arkansas as a food-service worker in a cafeteria. She was entitled to two unpaid thirty-minute breaks and two paid fifteen-minute breaks each day. During one of her paid breaks, appellant slipped and fell as she was

getting a snack from the cafeteria for her own personal consumption. The Commission denied appellant's claim for disability benefits after determining that she was not performing employment services at the time of her injury. The court of appeals reversed the Commission's decision, noting that [she] was paid for her fifteen-minute breaks and was required to assist student diners if the need arose. Based on those facts, the court of appeals held that the employer gleaned benefit from appellant being present and required to aid students on her break. Likewise, in this matter Georgia-Pacific also gleaned benefit from White remaining near his work station in order to monitor the progress of the dryers and immediately return to work if necessary.

339 Ark. at 478-79, 6 S.W.3d at 100-01.

McKinney argues that the activities and situation of this case are similar to those constituting "employment services" in *White v. Georgia-Pacific Corp.*, *supra*, and *Ray v. University of Arkansas, supra.* He points to his testimony that he felt an obligation to report or take care of anything askew that he might observe during his break, and that he returned from break-time activities more refreshed and better able to complete his work. We do not find such an analogy. The claimant in *Ray* was required to aid students on her break, and the claimant in *White* was forced to remain near his immediate work area in order to monitor machines and immediately return to work if necessary: in each case the employer gleaned benefit from the worker performing, or standing ready to perform, specific activities while on break.

■ McKinney, on his way to his smoke break, was involved in nothing generally required by his employer and was doing nothing to carry out the employer's purpose; thus, the employer gleaned no benefit from his activities on break. *See Pifer v. Single Source Transp., supra.* We reject McKinney's argument that his left-knee injury was compensable because it occurred during a paid break taken pursuant to a union-negotiated contract. Thus, we affirm the Commission's finding that the jump and landing that caused the injury did not occur at a time when the claimant was performing employment services.

Affirmed.

GRIFFEN and CRABTREE, JJ., agree.