Janice PARKER *v.* COMCAST CABLE CORPORATION

CA 07-158                                    269 S.W.3d 391

Court of Appeals of Arkansas
Opinion delivered December 5, 2007

Appellant, pro se.

*Rieves, Rubens & Mayton*, by: *David C. Jones*, for appellees.

SARAH HEFFLEY, Judge. Appellant Janice Parker appeals the decision of the Arkansas Workers' Compensation Commission denying her claim for benefits based on a finding that she was not performing employment services when she injured her back. Appellant contends that the Commission's decision is not supported by substantial evidence and that the Commission erred by not admitting her proffered exhibits into evidence. We disagree and affirm.

Appellant had been working for appellee Comcast Corporation since 1997 as a customer service representative when on May 8, 2004, she tripped and injured her back. Appellant usually worked on weekdays from 7:00 a.m. to 4:00 p.m., but she also worked overtime on weekends. The accident occurred on a Saturday morning just before 7:00 a.m. as appellant was preparing to work an overtime shift from 7:00 a.m. to 12:00 p.m. Appellant testified that the building was locked on the weekends and that it was necessary for her to use a key card to gain entry to the building. Comcast as well as other tenants leased office space in this building that was open to the public during regular business hours.

After arriving that morning, appellant first went to get a soda in the Comcast break room located on the ground floor, where she also had to use her key card to get inside. She then proceeded to the elevator and selected the third floor where her office in the call center was located. Appellant tripped as she was alighting from the elevator on the third floor. Appellant was not sure why she had stumbled, but when she looked back at the elevator it was not level with the floor.

After gathering herself, appellant used her key card to enter the call center. She then clocked in by entering her code into her telephone and began working. Appellant notified her supervisor about the incident, and she sought medical treatment with her regular doctor for lower lumbosacral discomfort that afternoon and again on Monday.

An MRI of her lumbar spine, which revealed a large posterior disc protrusion with severe stenosis at L4-5, was taken on May 12, 2004. Appellant was referred to Dr. Scott Schlesinger, a neurosurgeon, who performed a surgical decompression and discectomy at that level on June 8, 2004. A subsequent MRI showed a recurrence of the disc herniation at L4-5, which was again surgically repaired by Dr. Schlesinger on October 14, 2004. In

May 2005, Dr. Schlesinger reported that appellant had reached maximum medical improvement with a permanent restriction of light duty based on a functional capacity evaluation, and he assigned an anatomical impairment rating of twelve percent.

Soon thereafter, appellant presented to Dr. Schlesinger with continued complaints of pain, and another MRI was performed on June 3, 2005. This MRI revealed a disc herniation at L5–S1 with an extruded disc fragment that impinged on the S1 nerve root and thecal sac. After discussing treatment options with Dr. Schlesinger, appellant planned to have a discectomy.

At appellee's request, appellant was evaluated by Dr. Steven Cathey on August 23, 2005. In a report of that date, Dr. Cathey concluded that the herniation at L5–S1 was a new finding that was not related to the May 2004 injury at L4–5.

Although appellee had initially accepted appellant's claim as compensable and had paid all appropriate benefits, after deposing appellant it took the position that appellant had not sustained a compensable injury on May 8, 2004, because she was not performing employment services at the time of the accident.[1] Based on Dr. Cathey's report, appellee maintained that, in any event, it was not responsible for paying benefits associated with the herniation at L5–S1 because it was not related to the accident that occurred on May 8, 2004. Appellant contended, however, that she was performing employment services at the time of the May 2004 accident and that the herniation at L5–S1 was a natural progression of the original injury.

After a hearing, an administrative law judge determined that appellant was not performing employment services at the time of the accident, and thus denied appellant's claim for further benefits. In pertinent part, the law judge found:

> The claimant was merely en route to her work station where she had to sign in by telephone to begin her duties. The claimant had not actually begun any work activities at the time of the incident nor did she have to pick up mail, invoices or other business papers on her way to her office. While the claimant was on the premises where her employer is housed, she was in the public space of the elevator and hallway before actually entering her work area.

---

[1] Appellee did not seek reimbursement of any benefits it had paid.

On appeal, the Commission affirmed and adopted the law judge's decision. Hence this appeal.

Appellant first argues that the evidence does not support the Commission's decision that she was not performing employment services at the time of the accident. In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Jones v. Xtreme Pizza*, 97 Ark. App. 206, 245 S.W.3d 670 (2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mays v. Alumnitec Inc.*, 76 Ark. App. 274, 64 S.W.3d 772 (2001). When an appeal is taken from the denial of a claim by the Commission, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *McDonald v. Batesville Poultry Equipment*, 90 Ark. App. 435, 206 S.W.3d 908 (2005).

In order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2007). A compensable injury does not include an injury which was inflicted upon the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Dairy Farmers of America, Inc. v. Coker*, 98 Ark. App. 400, 255 S.W.3d 905 (2007). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Pifer v. Single Source Transportation*, 347 Ark. 851, 69 S.W.3d 1 (2002). The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Id.*

Prior to Act 796 of 1993, the premises exception to the going-and-coming rule[2] provided that, although an employee at the time of injury had not reached the place where his job duties

---

[2] The going-and-coming rule ordinarily denies compensation to an employee while he is traveling between his home and his job, reasoning that employees having fixed hours and

were discharged, his injury was sustained within the course and scope of his employment if the employee was injured while on the employer's premises or on nearby property either under the employer's control or so situated as to be regarded as actually or constructively a part of the employer's premises. *Hightower v. Newark Public School System,* 57 Ark. App. 159, 943 S.W.2d 608 (1997). In *Hightower,* however, we held that the statutory requirement of the 1993 Act that an employee must be performing employment services at the time of the injury eliminated the premises exception to the going-and-coming rule.

In the instant case, the appellant was injured getting off an elevator in a common area of the building in which Comcast was one of the tenants, but before she reached her work station to clock in and begin work. Appellant's injury may have been compensable under the former premises exception, but the critical inquiry under current law is whether she was performing employment services when the injury occurred. *See Moncus v. Billingsley Logging,* 366 Ark. 383, 235 S.W.3d 877 (2006); *Hightower, supra.*

Applying the current standard in *Hightower, supra,* we affirmed the Commission's decision that the employee was not performing employment services when she slipped and fell on ice in the employer's parking lot. Similarly in *Srebalus v. Rose Care, Inc.,* 69 Ark. App. 142, 10 S.W.3d 112 (2000), we held that an employee who stepped in a pothole on the employer's parking lot did not sustain an injury covered under workers' compensation.

In other circumstances, we have considered injuries sustained by employees who were entering the workplace to have occurred while the employee was performing employment services. In *Shults v. Pulaski County Special School District,* 63 Ark. App. 171, 976 S.W.3d 399 (1998), the employee was responsible for checking the alarm system when he arrived at work, and he fell while entering the building to perform that task. In reversing the Commission's denial of benefits, we recognized that merely entering the employer's premises was not sufficient to bring an employee within the employment-services provision. However, we held that the employee in that case was not merely entering the premises when the injury occurred but that he was engaged in an

places of work are generally not considered to be in the course of their employment while traveling to and from work. *Wright v. Ben M. Hogan Co.,* 250 Ark. 960, 468 S.W.2d 233 (1971).

activity (checking the alarm) that carried out the employer's purpose and advanced the employer's interests.

In *Foster v. Express Personnel Services*, 93 Ark. App. 496, 222 S.W.3d 218 (2006), Foster worked in accounts receivable on the second floor of the employer's premises, and her duties included processing credit card receipts and e-checks that she had to retrieve from the cashier's desk in a separate area. Employees entered the building through the service bay, and there were times when Foster was questioned by other employees in the service-bay area. Her duties also required her to visit the service-bay area as needed at other times during the work day, and she was considered to be on the job when she entered the service-bay doors. On the day of the accident, Foster slipped and fell just after she had arrived at work and was walking in the service-bay area on her way to the cashier's desk to collect credit card receipts. On these facts, we held that Foster was entitled to benefits because she was injured in an area where employment services were expected of her.

Also in *Caffey v. Sanyo Manufacturing Corp.*, 85 Ark. App. 342, 154 S.W.3d 274 (2004), the employee was required to produce an identification badge when she entered the employer's parking lot and then had to walk to a second guard shack to display her badge before entering the plant to clock in. The employee fell in the hallway just five feet shy of the clock-in station and some 200 feet from her work station. We held that the employee's claim was compensable because these preliminary requirements advanced the employer's interest.

Appellant asserts that the facts of this case compare favorably with those in *Caffey*, likening her use of a key card to the security requirements of the employer in that case. However, we cannot equate the requirement of undergoing security checks with the necessity of swiping a key card to unlock a door. In our view, appellant was merely on her way to work, and there was no testimony that she had any job-related responsibilities as she walked through the building. The facts of this case are more like those in *Hightower, supra,* and *Srebalus, supra,* and it is our conclusion that substantial evidence supports the Commission's decision that appellant was not performing employment services when she tripped while emerging from the elevator.

We thus reject the notion that the requirement of having to unlock the door renders this claim compensable. Had appellant tripped during regular business hours when the door was

unlocked, there would be no question that appellant's claim would not be compensable. We decline to create a distinction that would render a claim compensable just because the door to the building was locked. Moreover, to accept appellant's argument would erode the legislature's intent to do away with the premises exception.

■ Appellant also contends that this case is controlled by the decision in *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006), in which the supreme court reversed the denial of benefits when the employee was injured while returning from an authorized break. In this regard, appellant points out that she, too, had gone to the break room immediately prior to her accident. *Wallace*, however, is clearly distinguishable because here the appellant was not on a break when she went to get a soda – she had yet to begin her work day.

Appellant also asserts that the disc herniation found at L5–S1 was causally related to the May 2004 accident. Because we are affirming the Commission's decision that this incident did not arise out of and in the course of appellant's employment, it is not necessary for us to address this issue.

■ Appellant's final argument is that the Commission erred by excluding exhibits concerning a complaint made to OSHA about the elevator and appellee's response to a letter received from OSHA. Appellant contends that the exhibits were "direct evidence to the appellee's notification of faulty equipment (elevator) by OSHA" and showed "reasonable and logical workplace injury prevention and remedies; relevant evidence that shows the nature and condition of the employee's workplace; that the site of the injury was considered an on-the-job injury by Employer; federal protection of the right of employee(s) to engage in (legal) notification(s) of the faulty equipment to a governmental agency (OSHA) without fear of workplace or legal ramifications; employers (Comcast) response to a legal inquiry from a governmental agency (OSHA), which could impact past, present and future safety of appellant's workplace." Appellant does not explain why these matters are relevant to a workers' compensation claim. When an appellant fails to make a convincing argument or to cite authority in support of it, we will not address the argument on appeal. *Jones Truck Lines v. Pendergrass*, 90 Ark. App. 402, 206 S.W.3d 272 (2005). We note only that we have held that employ-

ees in workers' compensation cases no longer have standing to assert safety violations with the passage of Act 796 of 1993. *Vittitow v. Central Maloney, Inc.*, 69 Ark. App. 176, 11 S.W.3d 12 (2000).

Affirmed.

GLOVER and BAKER, JJ., agree.