2010 Ark. App. 87

**Glenda DEARMAN, Appellant**

**v.**

**DELTIC TIMBER CORPORATION, Travelers Insurance Co., and Death & Permanent Total Disability Trust Fund, Appellees.**

**No. CA 09–875.**

Court of Appeals of Arkansas.

Jan. 27, 2010.

Ronald Lynn Griggs, El Dorado, AR, for appellant.

Phillip Parks Cuffman, Little Rock, AR, for appellee.

DAVID M. GLOVER, Judge.

Appellant, Glenda Dearman, worked as a lumber grader for appellee Deltic Timber. Twice each day, once before lunch and once after lunch, Deltic shut down the mill production for mandatory fifteen-minute breaks. On September 18, 2006, at the beginning of one of the mandatory breaks, Dearman tripped over a board on her way to the break room and injured her left shoulder. The administrative law judge found that Dearman had proven by a preponderance of the evidence that she had sustained a compensable left-shoulder injury; that the medical treatment she received for her left shoulder was reasonable and necessary; and that she had established a decrease in wage-earning capacity equal to ten percent to the body as a whole, over and above her eleven-percent anatomical-impairment rating. Deltic appealed to the Commission, which reversed the ALJ's decision, finding that Dearman was not performing employment services at the time of her injury. Dearman now appeals, arguing that her injury is compensable because, at the time she was injured, she was doing something generally required of her by her employer. She further contends that she is totally disabled and should be awarded benefits for that disability. We agree with Dearman's argument that she was performing employment services at the time of her injury, and we reverse and remand on that basis. We are unable to reach the merits of Dearman's second argument.

## Standard of Review

In *Clardy v. Medi–Homes LTC Services LLC,* 75 Ark.App. 156, 160, 55 S.W.3d 791, 793 (2001) (citations omitted), this court set forth the standard of review concerning the sufficiency of the evidence in workers' compensation cases:

On review, this court will affirm if the Commission's decision is supported by substantial evidence. To determine if the decision is supported by substantial evidence, this Court views the evidence in the light most favorable to the Commission's findings and affirms if reasonable minds could have reached the same conclusion. Where a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires the reviewing court to affirm the Commission if its opinion displays a substantial basis for the denial of relief. The injured party bears the burden of proof in establishing entitlement to benefits under the Workers' Compensation Act and must sustain that burden by a preponderance of the evidence. The provisions of the Workers' Compensation Act were formerly construed liberally. However, Act 796 changed the former practice and mandated that the Commission and the courts construe the provisions strictly.

## Hearing Testimony

At the hearing, Dearman testified that as a lumber grader, the lumber would come to her on a chain belt, and she would have to look at the top side of the lumber and then flip the lumber over and look at the other side. She explained that the grading process was very fast, that it worked sort of like an assembly line, and that she worked in concert with the other timber graders. Dearman explained that there were mandatory breaks at work, and that when the whistle blew, the machines were shut down and everyone went on a fifteen-minute break. She said that there was nothing for her to do during that fifteen minutes except to be on break; that she was not subject to being called back to work during the break; that she did not

clock out on her break; that no one, to her knowledge, clocked out on break; and that she was paid for her break. Dearman testified that there was no reason to believe that it was not beneficial to Deltic for everyone to take a break, that it was beneficial to Deltic to rest their workers because they worked long hours and they could not do their job if they were tired.

Dearman testified that on September 18, 2006, when the bell rang signaling a break, she went down the stairs and outside, and she tripped on some lumber that was stacked by the door and fell on her left shoulder. Dearman was eventually diagnosed with a rotator-cuff tear, she underwent surgery in December 2006, and she was ultimately fired for missing too much work.

Jim Phillips, the manager of corporate safety, environment, and insurance at Deltic, testified that the mill did shut down during break times, and that the employees were paid for those breaks. He was unsure if the employees could leave the premises during those fifteen-minute breaks. He also testified that it was a generally accepted industry practice to give employees breaks so that they could go to the bathroom, take care of their business, get a cold drink, and refresh themselves. He said that it made for happier and more efficient employees if they were given breaks and it also promoted safety, all of which was in Deltic's best interest.

### Commission Opinion

The Commission, with Commissioner Hood dissenting, found that a review of the evidence demonstrated that Dearman was not performing employment services at the time she fell and injured her left shoulder. The Commission noted that Dearman was injured on her way to take a break; that she had exited the building in which she worked when she tripped and fell; that there was no work to be performed because production was stopped during the break; and that none of the workers were subject to being recalled to perform work during the breaks. The Commission found that Dearman was not performing employment services at the time she fell because she was going on a break, production had stopped, she was not required to stand ready to assist the employer during that break, and she was therefore not furthering her employer's interests.

### Argument and Analysis

On appeal, Dearman first argues that her injury was compensable because at the time she was injured, she was doing something generally required of her by Deltic.

A "compensable injury" is an accidental injury causing internal or external harm to the body, arising out of and in the course of employment, which requires medical services or results in disability or death. Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2007). A compensable injury does not include an injury inflicted upon the employee at a time when employment services were not being performed. Ark.Code Ann. § 11–9–102(4)(B)(iii). The same test is used to determine when an employee is performing "employment services" as to determine whether an employee was acting "within the course of employment"—the test is "whether the injury occurred 'within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly.'" *Pifer v. Single Source Transportation,* 347 Ark. 851, 857, 69 S.W.3d 1, 4 (2002) (quoting *White v. Georgia–Pacific Corp.,* 339 Ark. 474, 478, 6 S.W.3d 98, 100 (1999)). The issue of whether an employee was performing em-

ployment services within the course of employment depends on the particular facts and circumstances of each case. *Texarkana School Dist. v. Conner,* 373 Ark. 372, 284 S.W.3d 57 (2008). Our supreme court noted that because Act 796 of 1993 did not define "employment services," that the appellate courts must define these terms in such a manner that neither broadens nor narrows the scope of the Act. *Id.* "Employment services" is not limited to duties an employee is hired to do; an employer may enlarge the course of employment by assigning tasks outside the usual scope of employment. *Witt v. Allen & Son, Inc.,* 2009 Ark. App. 561, 2009 WL 2778031. Whether an employer requires an employee to do something has been dispositive of whether the activity constituted employment services. *Id.*

In *Wallace v. West Fraser South, Inc.,* 365 Ark. 68, 225 S.W.3d 361 (2006), *White v. Georgia–Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999), and *Ray v. University of Arkansas,* 66 Ark.App. 177, 990 S.W.2d 558 (1999), it was determined that the employees were performing employment services at the time they were injured even though they were on break because they were subject to being recalled to work during their breaks. In the present case, Dearman was paid for her breaks if she stayed on company premises; however, she was not subject to being recalled during those breaks.

In *Matlock v. Blue Cross Blue Shield,* 74 Ark.App. 322, 49 S.W.3d 126 (2001), this court reversed the Commission and granted benefits to an employee who fell while returning to her desk from the restroom, referring to the "personal-comfort" doctrine. This doctrine allows a pause to minister to life necessities and holds that an employer is indirectly benefitted in the form of better work from a happy and rested worker. The *Matlock* court held

that whether a worker was performing employment services within the course of employment at the time of the accident was a factual question to be resolved based upon the circumstances of each case, not on blanket notions of "personal comfort," and it developed six factors to rely upon in determining whether conduct falls within the meaning of employment services in this context. Our supreme court specifically declined to adopt those factors in *Collins v. Excel Specialty Products & Crawford,* 347 Ark. 811, 69 S.W.3d 14 (2002), but reversed the Commission's denial of benefits after the worker left her work station to use the bathroom and fell on her way to the restroom, holding that the employee was engaged in conduct permitted by the employer and was entirely consistent with the employer's interest. The supreme court held that to automatically accept a personal-comfort activity as providing employment services would impermissibly broaden the requirements of Act 796, but to automatically reject a personal-comfort activity as not providing employment services would impermissibly narrow the requirements of Act 796.

In the present case, the mill operated in the context of an assembly-line type setting, and by the employer's own admission, the mandatory breaks were given so that all employees could take care of personal business, including getting something to drink or using the restroom, at the same time. This provides a direct benefit to the employer—employees are not constantly leaving the line during the day to attend to such matters.

In *Wal–Mart v. Sands,* 80 Ark.App. 51, 91 S.W.3d 93 (2002), this court affirmed the Commission's finding that employee was performing employment services when she was struck by a cart and injured while returning her purse to her locker after a scheduled break but before she clocked

back into work because she was required by Wal–Mart to store all personal items in her locker. In *Moncus v. Billingsley Logging,* 366 Ark. 383, 235 S.W.3d 877 (2006), our supreme court held that an employee who was killed in a wreck on the way to a new jobsite was performing employment services because on the day of the accident, the employer had required the employees to assemble at a central location to travel together to the jobsite. The supreme court held that it was significant that the employee was carrying out the express directions of his employer at the time of the accident, even though he was not engaged in the activity for which he was primarily employed—he was performing employment services because he was doing something that was generally required by his employer.

█ |₈In the present case, Dearman was doing something generally required by her employer. While Dearman was not required to work during her break, she was required to take a break because the plant shut down.

We are cognizant of the holding in *Harding v. City of Texarkana,* 62 Ark.App. 137, 970 S.W.2d 303 (1998), in which this court denied benefits to an employee who was injured on her way to the smoking area to smoke a cigarette, holding that although such a break might indirectly advance the employer's interest, it was not inherently necessary to perform the job that the employee was hired to do. However, in the present case, such breaks were inherently necessary for the jobs the employees were hired to do, as evidenced by the fact that the entire factory shut down, all of the employees were required to take their breaks at the same time, and those breaks directly advanced the employer's interest. This was supported by the testimony of the manager of corporate safety, who testified that it was a generally ac-

cepted industry practice to give employees breaks so that they could go to the bathroom, take care of their business, get a cold drink, and refresh themselves; that it made for happier and more efficient employees if they were given breaks; that it promoted safety; and that for all of those reasons, it was in Deltic's best interest to provide the breaks.

In *Wallace v. West Fraser South, Inc.,* 365 Ark. 68, 225 S.W.3d 361 (2006), our supreme court declined to adopt a bright-line rule that an employee who is on a break is *per se* performing employment services, holding that it need not address that issue because |₉on the facts of that case, Wallace was performing employment services when he was injured. Nevertheless, the supreme court, in a footnote, noted that this ruling did not prevent the appellate courts from considering such a theory in an appropriate future case. However, as in *Wallace,* we decline to adopt such a bright-line rule in the instant case because, on the particular facts of this case, we find that Dearman was performing employment services at the time she was injured.

Dearman also argues that she is totally disabled and should be awarded benefits for that disability. We cannot address this issue at this time; however, because we reverse the Commission's dismissal of the claim and hold that Dearman was performing employment services at the time of her injury, the issue of the extent of Dearman's disability is now before the Commission for determination.

Reversed and remanded.

GRUBER and BROWN, JJ., agree.