2010 Ark. App. 236
**JONESBORO CARE & REHAB CENTER, Appellant**

v.

**Ronna WOODS, Appellee.**

No. CA 09–1030.

Court of Appeals of Arkansas.

March 10, 2010.

Rehearing Denied April 7, 2010.

Michael Scott Willhite, Orr Willhite, PLC, Jonesboro, for appellee.

RITA W. GRUBER, Judge.

This is an appeal by an employer, Jonesboro Care & Rehab Center (the "Center"), from a decision of the Arkansas Workers' Compensation Commission awarding benefits to Ronna Woods. On appeal, the Center contends that substantial evidence does not support the Commission's finding that Ms. Woods was performing employment services at the time she fell and sustained her injury. We agree. Accordingly, we reverse the Commission's decision.

I.

Ms. Woods worked for the Center as a certified nursing assistant. She typically worked the 10:00 p.m. to 6:00 a.m. shift. During working hours, she was allowed two fifteen-minute breaks and a thirty-minute break for a meal. The Center also required its employees to attend in-service seminars for instruction on every other Friday. These seminars, which were held in the dining hall, coincided with the dates employees received their paychecks. The Center paid employees one hour's wages for their attendance at the seminars.

On Friday, October 24, 2008, Ms. Woods attended a regularly scheduled training seminar in the dining hall. The meeting lasted twenty to thirty minutes and, at its conclusion, the director of nursing instructed the employees to form a line to receive their paychecks and to complete paperwork for a flu shot. The Center maintained a smoking area for its employees

outside the dining hall. Instead of standing in line, Ms. Woods decided to smoke a cigarette in the designated area while waiting for the line to shorten. After a few moments, she decided to go back inside because it was chilly. With a lighted cigarette in her hand, Ms. Woods walked over to a trash can to discard her chewing gum and then fell onto the concrete pavement, fracturing her left humerus.

Ms. Woods filed a claim seeking medical and temporary total disability benefits to a date yet to be determined. The Center controverted Ms. Woods's claim in its entirety, asserting that the injury occurred when she was not performing employment services. The law judge awarded benefits, finding that Ms. Woods was performing employment services at the time of the injury because:

> [T]he claimant was in the process of returning to the dining room, after having taken a cigarette break, while waiting for the line of employees, which had formed to complete documents and receive paychecks, to thin. The claimant had not received her paycheck nor had she clocked out at the time of her accidental injury. Further, the claimant had completed her smoke break and was returning to pick up her paycheck at the mandatory meeting at the time of her accident.

The Center appealed this decision to the Commission, which affirmed and adopted the law judge's opinion as its own. This appeal followed.

II.

For reversal, the Center contends that the Commission's decision is not supported by substantial evidence. The Center argues that the injury sustained by appellee did not occur while she was performing employment services.

In order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2009). A compensable injury does not include an injury that is inflicted upon the employee at a time when employment services are not being performed. Ark.Code Ann. § 11–9–102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Dairy Farmers of Am., Inc. v. Coker*, 98 Ark. App. 400, 255 S.W.3d 905 (2007). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007). The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Id.* Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008).

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Johnson v. Latex Constr. Co.*, 94 Ark. App. 431, 232 S.W.3d 504 (2006). Substantial evidence exists if reasonable minds could reach the same conclusion. *Sivixay v. Danaher Tool Group*, 2009 Ark. App. 786, 359 S.W.3d 433. However, our standard of review must not totally insulate the Commission from judicial review because this would render this court's function meaningless in workers' compensation cases. *Bohannon v. Walmart Stores, Inc.*, 102 Ark. App. 37, 279 S.W.3d 502 (2008). We will reverse if the Commission's decision is based on an incorrect application of the law. *Wallace v. W. Fraser S., Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006).

The sole issue in this appeal is whether appellee was performing employment services at the time of the injury. We turn to the case law to determine when an employee is deemed to be performing employment services. It is clear that injuries sustained by employees during restroom breaks and while employees are on their way to and from restroom facilities are considered compensable. *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002); *Collins v. Excel Specialty Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002); *Matlock v. Ark. Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001). In addition, injuries sustained by employees during a required break which benefits the employer are compensable. *See, e.g., Dearman v. Deltic Timber Corp.*, 2010 Ark. App. 87, 377 S.W.3d 301 (reversing Commission's denial of benefits where the entire factory shut down for all of the employees to take their required breaks at the same time, and those breaks directly advanced the employer's interest). We have also recently held that an injury is compensable when it is clear that the injury occurred during a break that was solely to benefit the employer, even if the break was not required. *Hudak–Lee v. Baxter County Reg'l Hosp.*, 2010 Ark. App. 121, 2010 WL 475354.

In *Hudak–Lee*, the employee was injured when she missed a step while stepping outside the hospital where she worked to keep herself alert after observing a sleeping patient in a quiet, dark

room. We determined that there was no evidence that she stepped outside the hospital for any purpose related to her own personal comfort or convenience—she was not going to her car, she was not going to get something to eat or drink, she was not eating or drinking at the time, she was not smoking, and she was not visiting with anyone. Holding that the only evidence in the record demonstrated that Hudak–Lee was walking in the cold night air to try to refresh herself solely for the benefit of her employer, we reversed the Commission's denial of benefits.

Finally, injuries sustained by employees who are "on call" during break or who are performing both employment services and personal services are compensable. *See, e.g., Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.,* 366 Ark. 297, 235 S.W.3d 499 (2006) (holding employee was advancing his employer's interest by having conversation with client of employer when he fell during a smoke break and reversing Commission's denial of benefits); *White v. Georgia–Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999) (holding employer gleaned a benefit from appellant remaining near his work station during a break to monitor machines, which was a requirement of his job duties, and therefore, appellant was performing employment services); *Ray v. Univ. of Ark.,* 66 Ark. App. 177, 179, 990 S.W.2d 558, 560 (1999) (finding appellant performed employment services when her employer received a benefit from appellant's presence during her lunch break by the requirement that she leave her break if a student needed her assistance; she was injured when she slipped on salad dressing while reaching for a snack from the cafeteria for her own consumption).

In this case, rather than waiting in line as directed by her employer, Ms. Woods was taking a smoke break. There is no evidence that the break was required by her employer; indeed, there was no evidence that she was even authorized to take a break. In fact, her coworker, who also took a smoke break, characterized the smoke break as an "unscheduled break." Furthermore, there is no evidence from the record that Ms. Woods was "on call" during this break or engaged in any activity from which her employer derived a benefit. The break was purely personal.

The fact that Ms. Woods was smoking during this break is not determinative. *Compare Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.,* 366 Ark. 297, 235 S.W.3d 499 (2006) (holding injury that occurred during a smoke break was compensable where employer gleaned some benefit from employee's conversation with customer during break), *with McKinney v. Trane Co.,* 84 Ark. App. 424, 143 S.W.3d 581 (2004) (holding injury that occurred on way to smoke break was not compensable where employee was involved in nothing generally required by his employer and employer gleaned no benefit from employee's break). In this case, appellee just as easily could have been eating an apple or drinking a soda. The critical fact is that Ms. Woods was not where she was supposed to be or doing what she was directed to do. Accordingly, we hold that the Commission's finding that Ms. Woods was performing employment services is not supported by substantial evidence and we reverse its decision awarding benefits.

Reversed.

GLADWIN, GLOVER, MARSHALL, and BROWN, JJ., agree.

HART, ROBBINS, KINARD, and BAKER, JJ., dissent.

KINARD, J., dissenting.

The majority correctly states that in determining whether an employee is performing employment services, we examine whether the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). Further, it correctly states the standard of review, which is that we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Id.* But then, rather than determining whether substantial evidence supports the Commission's finding that Ronna Woods was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly, the majority disregards the Commission's findings and makes its own.

The administrative law judge (ALJ) found that appellant's employees were required to attend the in-service meetings. An employee was required to clock in, attend the meeting, pick up a paycheck, and clock out. Employees could not pick up a paycheck until the ₈meeting was over. Once an employee received a check, the employee was required to clock out, at which time the employee was free to leave the facility.

On the day of the injury, Woods clocked in, and the meeting was conducted in the dining room of appellant's facility. Employees were told to complete a form for their flu shot and present it when getting a paycheck. At the conclusion of the meeting, a line formed as employees proceeded to complete the flu forms and pick up their paychecks. Several employees, including Woods, stepped just outside the dining room, waiting for the line to thin. Once outside, Woods lit a cigarette and began smoking, but after two to three minutes, she decided to go back in because it was cold. Woods was throwing away a piece of gum and returning inside when she fell and broke her arm.

The ALJ noted that Woods's attendance at the meeting was mandatory and she could not clock out until she picked up her paycheck. He further concluded that appellant "benefitted from its employees attending" the meeting "in that it was able to distribute information and training to the employees as well as issue payroll checks." Further, appellant "was able to obtain completed forms for the employees receiving flu shots."

In ruling that Woods was performing employment services, the ALJ found that Woods was "in the process of returning to the dining room, after having taken a cigarette break, while waiting for the line of employees, which had formed to complete documents and receive paychecks, to thin." He also found that Woods had "not received her paycheck nor had she clocked out at the time of her accidental injury." The ALJ further found that Woods ₉"had complete[d] her smoke break and was returning to pick up her paycheck at the mandatory meeting at the time of her accident." The ALJ concluded that Woods was performing employment services, and the Commission adopted the ALJ's decision.

Substantial evidence supports the Commission's decision. As required by her employer, Woods was waiting for her paycheck and to hand in forms. As specifically found by the ALJ, appellant, a nursing home with elderly residents, benefited from its employees attending the meeting in that it was able to distribute information and training to the employees, issue payroll checks, and obtain the completed flu shot forms. Woods could not clock out until she received her paycheck. Thus,

the benefit to her employer of Woods remaining on the premises could end only after Woods had received her paycheck, completed forms for a flu shot, and clocked out. Moreover, there is no finding that Woods was being dilatory during this two-minute interval; as found by the ALJ, Woods was instead waiting for the line to thin. She was two feet away from the dining room when the injury occurred, and according to Woods, the room was filled with in excess of two hundred people. As she had not received her paycheck, her presence, as found by the ALJ, was benefiting her employer. Thus, the Commission's conclusion that Woods was performing employment services was supported by substantial evidence, and we should affirm.

When the Arkansas Supreme Court holds that an employee is performing employment services, the same fact pattern emerges: the employee is doing something personal in nature, such as taking a break, but also at the same time advancing the employer's interests, directly or indirectly. *See Texarkana Sch. Dist. v. Conner,* 373 Ark. 372, 284 S.W.3d 57 (2008); *Kimbell v. Association of Rehab Indus.,* 366 Ark. 297, 235 S.W.3d 499 (2006); *Wallace v. West Fraser South, Inc.,* 365 Ark. 68, 72, 225 S.W.3d 361, 365 (2006); *White v. Georgia–Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999). The facts of this case do not run contrary to this line of cases. Granted, Woods stepped just outside of the dining room to smoke, but she was advancing her employer's interest by remaining on the premises, still on the clock, unable to leave, waiting for the line to thin, to hand in the requisite forms to obtain a flu shot (certainly to the benefit of this elder-care facility) and receive a paycheck. The flaw in the majority's analysis is that it disregards and ignores the Commission's conclusion that Woods was advancing her employer's interest. The majority even goes so far as to rely on the testimony of a co-

worker of Woods to support its reversal. In doing so, the majority is not considering the evidence in the light most favorable to the Commission's decision. Clearly, there is substantial evidence to support the Commission's decision. Thus, I respectfully dissent.

HART, ROBBINS, and BAKER, JJ., join.