2010 Ark. App. 271

**George HILL, Appellant**

v.

**LDA LEASING, INC., Employer; AIG Domestic Claims, Inc., Insurance Company of Pennsylvania, Appellees.**

**No. CA 09–955.**

Court of Appeals of Arkansas.

March 31, 2010.

Rehearing Denied May 12, 2010.

Stephanie Ann Linam, Charles Phillip Boyd, Jr., The Boyd Law Firm, Little Rock, for appellant.

Jarrod S. Parrish, Worley, Wood & Parrish, P.A., Little Rock, for appellees.

ROBERT J. GLADWIN, Judge.

This appeal follows the June 3, 2009 decision of the Workers' Compensation Commission (Commission) affirming and adopting the December 29, 2008 opinion of the Administrative Law Judge (ALJ), finding that appellant George Hill failed to prove by a preponderance of the evidence that he sustained a compensable right-shoulder injury on November 8, 2007. The Commission found that appellant failed to prove by a preponderance of the evidence that his right-shoulder injury arose out of and in the course of his employment with appellee/employer LDA Leasing, Inc. (LDA). Appellant argues that the Commission erred in its interpretation and application of the law regarding the determination of whether he suffered a compensable injury during the course and scope of his employment. We affirm.

*Facts*

Appellant was a truck driver for LDA on November 8, 2007. On that day he picked up a pre-loaded trailer of processed chickens in Athens, Alabama, and delivered them to a Pilgrim's Pride plant in Natchitoches, Louisiana. Appellant testified that he arrived at the plant somewhere between noon and 1:00 p.m. that afternoon.

Upon arrival, appellant was assigned a loading dock where he waited while Pilgrim's Pride employees unloaded his trailer. The unloading process could last between thirty minutes and three hours, but appellant was only allowed to record fifteen minutes in his log book for unloading. Appellant could be terminated for unhooking and taking the tractor from the trailer section of the truck for his convenience during unloading, and he was responsible for the truck and its contents at all times.

While waiting for his truck to be unloaded, appellant decided to go to the restroom. Upon exiting the restroom, appellant stopped to get some crackers out of a vending machine located in the Pilgrim's Pride "snack room." While pushing the button for his snack crackers on the vending machine, appellant's feet slipped out from under him, and he fell down between two picnic-style tables, striking his right elbow and arm. Appellant's fall occurred somewhere between 3:00 and 3:30 p.m.

After falling, appellant returned to his truck to lie down, but his pain was too severe. He asked directions to the nurse's station. Appellant knew he had hurt his right-upper arm "pretty bad" and told the nurse that he may have dislocated his arm. The nurse told appellant that he did not have a dislocated shoulder, gave him three heating pads for the pain, and instructed him to go back to his truck. The nurse did not document appellant's visit.

After using the heating pads, appellant's arm started to feel better. He then sat up in the driver's seat until his truck was unloaded and left the Pilgrim's Pride facility between 4:00 and 5:00 p.m.

Appellant filed a claim seeking compensation benefits, and LDA controverted the claim contending that appellant was not performing employment-related services at the time of his injury. A hearing was held before the ALJ on October 2, 2008, at which time appellant argued that the specific issue of law in controversy was whether his injury occurred during the course and scope of his employment. He contended that it did and that appellees unjustifiably withheld workers' compensation benefits to which he was entitled.

The ALJ filed an opinion on November 8, 2007, stating that appellant failed to prove that he sustained a compensable right shoulder injury on November 8, 2007, specifically finding that appellant failed to prove by a preponderance of the evidence that his right shoulder injury on Novem-

ber 8, 2007, arose out of and in the course of his employment with LDA. Appellant filed a timely notice of appeal on January 27, 2009, and on June 3, 2009, the Commission issued an opinion affirming and adopting the ALJ's opinion. Appellant filed a timely notice of appeal on June 11, 2009, and this appeal followed.

This case is similar to one recently decided by this court. In *Jonesboro Care & Rehab Center v. Woods,* 2010 Ark. App. 236, 374 S.W.3d 193 we reiterated the applicable statutory law and standard of review with respect to the relevant issue in the instant case:

> In order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2009). A compensable injury does not include an injury that is inflicted upon the employee at a time when employment services are not being performed. Ark.Code Ann. § 11–9–102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Dairy Farmers of Am., Inc. v. Coker,* 98 Ark. App. 400, 255 S.W.3d 905 (2007). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Parker v. Comcast Cable Corp.,* 100 Ark. App. 400, 269 S.W.3d 391 (2007). The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Id.* Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Texar-*

kana Sch. Dist. v. Conner, 373 Ark. 372, 284 S.W.3d 57 (2008).

> In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Johnson v. Latex Constr. Co.,* 94 Ark. App. 431, 232 S.W.3d 504 (2006). Substantial evidence exists if reasonable minds could reach the same conclusion. *Sivixay v. Danaher Tool Group,* 2009 Ark. App. 786, [359] S.W.3d [433]. However, our standard of review must not totally insulate the Commission from judicial review because this would render this court's function meaningless in workers' compensation cases. *Bohannon v. Wal–Mart [Walmart] Stores, Inc.,* 102 Ark. App. 37, 279 S.W.3d 502 (2008). We will reverse if the Commission's decision is based on an incorrect application of the law. *Wallace v. W. Fraser S., Inc.,* 365 Ark. 68, 225 S.W.3d 361 (2006).

*Woods,* 2010 Ark. App. 236, at 3–4, 374 S.W.3d at 196–98.

The sole issue in this appeal, as in *Woods,* is whether appellant was performing employment services at the time of his injury. We turn to the case law to determine when an employee is deemed to be performing employment services. Arkansas courts have held that injuries sustained by employees during restroom breaks and while employees are on their way to and from restroom facilities are compensable. *Pifer v. Single Source Transp.,* 347 Ark. 851, 69 S.W.3d 1 (2002); *Collins v. Excel Specialty Prods.,* 347 Ark. 811, 69 S.W.3d 14 (2002); *Matlock v. Ark. Blue Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001). Additionally, injuries sus-

tained by employees during required breaks that are found to benefit employers have also been found to be compensable. See, e.g., Dearman v. Deltic Timber Corp., 2010 Ark. App. 87, 377 S.W.3d 301 (reversing Commission's denial of benefits where the entire factory shut down for all of the employees to take their required breaks at the same time, and those breaks directly advanced the employer's interest). This court also recently held that an injury is compensable when it is clear that the injury occurred during a break that was solely to benefit the employer, even if the break was not required. Hudak–Lee v. Baxter County Reg'l Hosp., 2010 Ark. App. 121, 2010 WL 475354 (finding there was no evidence that the employee deviated from her job duties for any purpose related to her own personal comfort or convenience).

Injuries sustained by employees who are "on call" during break or who are performing both employment services and personal services have also been found to be compensable. See e.g., Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas., 366 Ark. 297, 235 S.W.3d 499 (2006) (employer's interests advanced by employee having conversation with client of employer when he fell during a smoke break); White v. Georgia–Pacific Corp., 339 Ark. 474, 6 S.W.3d 98 (1999) (employer's interests advanced by employee remaining near his work station during a break to continue his duty to monitor machines); Ray v. Univ. of Ark., 66 Ark. App. 177, 179, 990 S.W.2d 558, 560 (1999) (employer's interests advanced by employee's presence in cafeteria during her lunch break and the requirement that she leave her break if a student needed her assistance).

In this case, appellant specifically testified that his primary job duties during the unloading process were to be at the truck to make sure that no damage was done to the vehicle, that the load was properly accounted for, and to be ready to move the truck at a moment's notice when it was unloaded. It is undisputed that appellant deviated from his return to the loading dock following a restroom break to purchase snack crackers from a vending machine in the plant's "snack room." While the record is not clear on the exact location of the "snack room," the evidence before us indicates that, while in route from the restroom, the "snack room" is located in a separate room, behind at least one set of doors. There is no evidence that appellant could either see his truck from the snack room or be seen by the dock employees in the event there was a problem with unloading the truck. The ALJ stated in his opinion that was affirmed and adopted by the Commission that

> the act of the Claimant pushing the vending machine buttons cannot be said to directly or indirectly advance the interests of his employer. In fact, since the Claimant left the immediate area of his truck, it could easily be said that the Claimant was doing the direct opposite of what was in his employer's interests. The Claimant's turn around testimony shows that it was in the interests of his employer for the Claimant to be at the truck to make sure that no damage was done to the vehicle, that the load was properly accounted for, and to be ready to move the truck when it was unloaded. . . . Therefore, I find that the Claimant's actions were in contravention to his employer's interests and find that the Claimant's injury to his shoulder did not arise out of and in the course of his employment.

In addition to looking at whether the injury occurred within the time and space boundaries of the employment, and when the employee was carrying out the employ-

er's purpose or advancing the employer's interest either directly or indirectly, courts have also looked to whether or not the injured employee was engaging in activities required by the employer. *See Ray, supra* (stating that whether an employer *requires* an employee to do something has been dispositive of whether that activity constituted employment services). In the instant case, appellant clearly indicated that he was not doing anything that was required of him at the time he fell. Regarding whether it even was physically possible for him to have been carrying out his job requirements at the time of the injury, appellant testified as follows:

Q. Jody, were you assisting at all in unloading the truck?

A. No, I was not.

Q. Were you supervising, at all in unloading that truck?

A. No, I was not.

Q. In fact, what you were supposed to do is simply stay there to—because you were responsible for what might have happened to your trailer, or what—making sure that all the produce go—or the product got on and off the truck accurately; is that right?

A. I was—I was responsible for my equipment.

Q. Okay. And if you left the truck and decided you were going to go to the other end of the plant, and they need you to move the truck, they don't need to have to track you down; is that right?

A. No, they don't.

Q. They need you to be there when they're ready for you to move that truck in case they have another one to come and—

A. That's correct.

Q. —load up?

A. That's correct.

We acknowledge appellant's argument that his mere presence on the premises somehow benefitted LDA, but hold that this situation is distinguishable from a scenario in which he injured himself while watching the truck or sitting in the cab as required by LDA. Instead, he injured himself while doing just the opposite of what was required.

■ The Commission is bound to examine the activity appellant was engaged in *at the time of the accident* when determining whether or not he was performing employment-related services. *See Conner, supra.* *See also Smith v. City of Fort Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004) (holding that the critical inquiry is whether the employer's interests were being directly or indirectly advanced by the employee at the time of the injury). Here, appellant was not advancing LDA's interests in any way at the time he was operating the vending machine away from the area in which his truck was being unloaded.

We distinguish the facts in this case from *Ray, supra*, because, although the employee's injury in that case was found to be compensable in large part because she was required to stay in the vicinity of the cafeteria during her break, here, appellant admitted that he was not in the vicinity of his truck—his sole source of responsibility—when his injury occurred. Additionally, in *White, supra*, the employee's injury was found to be compensable because he remained in a position where he could monitor his machine while taking a smoke break in an undesignated area. In contrast, appellant was not even in a position where he could have discharged the sole task required of him at the time. While in the break room, he could not have seen his truck had someone hit it; he could not have seen any damage inflicted upon the products being unloaded; and he was not

in an area where he could have determined whether someone needed him to move the truck for any reason.

The case is similar to *McKinney v. Trane Co.*, 84 Ark. App. 424, 143 S.W.3d 581 (2004), in which this court ruled that an injury suffered during a smoke break, when no other job responsibilities were being carried out, was not compensable. In response to arguments similar to those made by appellant, the court stated:

> McKinney argues that the activities and situation of this case are similar to those constituting "employment services" in *White v. Georgia–Pacific Corp., supra,* and *Ray v. University of Arkansas, supra.* He points to his testimony that he felt an obligation to report or take care of anything askew that he might observe during his break, and that he returned from break-time activities more refreshed and better able to complete his work. We do not find such an analogy. The claimant in *Ray* was required to aid students on her break, and the claimant in *White* was forced to remain near his immediate work area in order to monitor machines and immediately return to work if necessary: in each case the employer gleaned benefit from the worker performing, or standing ready to perform, specific activities while on break. McKinney, on his way to his smoke break, was involved in nothing generally required by his employer and was doing nothing to carry out the employer's purpose; thus, the employer gleaned no benefit from his activities on break. *See Pifer v. Single Source Transp., supra.* We reject McKinney's argument that his left-knee injury was compensable because it occurred during a paid break taken pursuant to a union-negotiated contract. Thus, we affirm the Commission's finding that the jump and landing that caused the injury did not occur at a time when the claimant was performing employment services.

*McKinney*, 84 Ark. App. at 429, 143 S.W.3d at 585. Appellant's decision to deviate from his route back from a restroom break to stop in the break room for an unspecified period of time is similar to the decision of the employee in *McKinney*. He was not in a position to perform any of the duties required of him by LDA while in the break room. Accordingly, we hold that the Commission's decision is affirmed.

Affirmed.

KINARD and GLOVER, JJ., agree.