SLIP OPINION Cite as 2016 Ark. App. 109

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–718

| | |
|---|---|
| ARKANSAS DEPARTMENT OF PARKS & TOURISM and PUBLIC EMPLOYEE CLAIMS DIVISION | **Opinion Delivered** February 17, 2016 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [G009775] |
| V. | |
| BILL J. PRICE | |
| APPELLEE | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellants, the Arkansas Department of Parks & Tourism (ADPT) and the Public Employee Claims Division, appeal from the decision of the Arkansas Workers' Compensation Commission (Commission) finding that appellee Bill Price was entitled to additional medical treatment by Dr. Mark Bailey, including surgery, and additional temporary total–disability (TTD) benefits from May 30, 2014, to a date yet to be determined. On appeal, appellants argue that the Commission erred by (1) finding that appellee was entitled to additional medical treatment proposed by Dr. Bailey at the expense of appellants; (2) finding that appellee was entitled to additional medical treatment by Dr. Bailey at appellants' expense even though Dr. Bailey is not appellee's authorized treating physician; and (3) finding that appellee was entitled to additional TTD benefits. We affirm.

Price, who was fifty-two years old at the time of the hearing, was employed by ADPT when he sustained an admittedly compensable right-shoulder injury on October 25, 2010.

SLIP OPINION

He was initially seen by Dr. Bruce Smith, and an MRI revealed a partial-thickness rotator cuff tear, as well as abnormality about the superior labrum. Price underwent physical therapy at the direction of Dr. David Collins; however, when he began suffering from shoulder stiffness, he sought approval from the Commission to change his authorized physician to Dr. Kevin Rudder. This request was granted on March 16, 2011.

Dr. Rudder performed four separate surgical procedures on Price's right shoulder. Price indicated that the first procedure was an "arthroscopic surgery and manipulation," which gave him some relief initially. However, his shoulder froze up again, and he then underwent a second manipulation surgery. Price stated that his range of motion improved after the second surgery but his pain continued. Dr. Rudder then performed two more surgical procedures in the form of "AC resections," which Price indicated gave him minimal relief.

Appellants requested an independent medical evaluation of Price by Dr. Eric Gordon, which occurred on August 21, 2013. Dr. Gordon noted that Price continued to experience pain in his shoulder and suggested that it could be related to instability in the distal clavicle. However, Dr. Gordon stated that Price's symptoms did not warrant further treatment and that he did not see any particular reason why Price should be on permanent work restrictions or limitations, although a functional evaluation would be helpful. Dr. Gordon assigned Price a six percent permanent-anatomical-impairment rating to his right upper extremity, which was equivalent to four percent to the body as a whole.

In January 2014, Price visited his primary-care doctor for various health issues and

SLIP OPINION

continued to complain about pain and instability in his right shoulder. After several referrals, Price saw Dr. Mark Bailey on May 30, 2014. Dr. Bailey requested x-rays and another MRI, and, after reviewing the test results, he found that Price's right distal clavicle was 1 to 1.5 inches shorter due to the prior surgeries. Dr. Bailey noted that Price had a "very good rotator cuff" but that there was a space between his acromion and his previous distal-clavicle resection of approximately 2.5 inches. Dr. Bailey further observed a scarred area on Price's shoulder "where skin and deltoid is stuck down in the defect of his distal clavicle resection." He recommended that Price undergo a fifth surgery, during which he would be fitted with a bony allograft in order to reconstruct the distal end of his clavicle and bring his shoulder back out to length. Dr. Bailey indicated that the surgery would also reconstruct Price's coracoclavicular ligaments and separate his skin and deltoid from the underlying rotator cuff and bursal tissue.

In a July 28, 2014 letter to appellants, Dr. Bailey further explained the details of the recommended surgery and stated that the procedure would hopefully decrease or eliminate Price's pain and improve his right-shoulder function and range of motion. Dr. Bailey indicated that Price's need for additional surgery was directly related to his 2010 injury and subsequent surgeries. With regard to Price's expected recovery after the surgery, Dr. Bailey stated that Price could return to light-duty work as soon as he was ready, which would likely be within two to three weeks postsurgery, and that he could potentially return to full-duty work after three months.

On October 7, 2014, Price's medical records were reviewed by an orthopedic surgeon

with the Medical Institute of America at the request of appellants. This report concluded that the surgery recommended by Dr. Bailey was not medically appropriate, noting that there were no "peer-reviewed studies that this treatment affects outcome."

Following appellants' refusal to pay for the surgery by Dr. Bailey, Price filed a claim with the Commission requesting additional medical treatment and TTD benefits. At the October 2014 hearing before the Administrative Law Judge (ALJ), the parties agreed that there were three issues to be determined: "(1) [w]hether the claimant is entitled to additional medical treatment, including but not limited to the surgery recommended by Dr. Bailey[;] (2) [w]hether the claimant is entitled to temporary total disability benefits from August 21, 2013, to a date to be determined[;] and (3) [a]ttorney's fees."

Price testified at the hearing that he had attempted to continue working for ADPT after his October 2010 shoulder injury but that he had been unable to perform even light duties. He stated that he had been off work since December 2010 and that he had not looked for employment since that time due to the pain, popping, weakness, and instability in his right shoulder. He indicated that he had recently applied for Social Security benefits. According to Price, he cannot raise his right arm above shoulder-level without pain, and even brushing his teeth, shaving, or bathing causes pain. He testified that he would rate his pain as a five out of ten and that he takes prescription pain medication. He removed his shirt to show the ALJ his right shoulder, which had a depression from the removal of bone at the clavicle. Price stated that he went to see Dr. Bailey after appellants refused to allow further treatment by Dr. Rudder. While Price admitted that appellants had eventually agreed to

allow him to seek further treatment from Dr. Rudder, he indicated that he had received this approval only after he had already seen Dr. Bailey. Price stated that he had recently obtained a final refill of his pain medication from Dr. Rudder and that he did not intend to return to Dr. Rudder for treatment.

After hearing all of the evidence, the ALJ found that Price had failed to prove by a preponderance of the evidence that he was entitled to the additional medical treatment recommended by Dr. Bailey and that he had also failed to prove his entitlement to additional TTD benefits. Price appealed to the Commission, which reversed the ALJ's opinion in a 2–1 decision. The Commission found that Price had proved his entitlement to additional medical benefits in the form of treatment recommended by Dr. Bailey, including surgery, and to additional TTD benefits from May 30, 2014, to a date yet to be determined. Appellants now appeal from the Commission's decision.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Evans v. Beamis Co., Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51. This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* We reverse the Commission's decision only if we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Id.* Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of

5



the Commission. *Id.*

In their first point on appeal, appellants contend that the surgery recommended by Dr. Bailey was not reasonable and necessary treatment in connection with Price's compensable right-shoulder injury. Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires employers to provide such medical services as are reasonably necessary in connection with the injury received by the employee. The injured employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonably necessary. Ark. Code Ann. § 11-9-705(a)(3); *Wise v. Village Inn*, 2015 Ark. App. 406, 467 S.W.3d 186. Reasonable and necessary medical treatment includes that necessary to accurately diagnose the nature and extent of the compensable injury; to reduce or alleviate symptoms resulting from the injury; to maintain the level of healing achieved; or to prevent further deterioration of the damage produced by a compensable injury. *Hopkins v. Harness Roofing, Inc.*, 2015 Ark. App. 62, 454 S.W.3d 751. What constitutes reasonable and necessary treatment under section 11-9-508(a) is a factual question for the Commission. *Id.*

The Commission found that, subsequent to four shoulder surgeries, Price has an obvious deformity to his right shoulder and that he continues to have functional limitations and pain. The Commission relied on Dr. Bailey's physical examination and assessment of Price, as well as Dr. Bailey's detailed explanation regarding the recommended surgery, to support its conclusion that the additional treatment was reasonable and necessary for Price's compensable injury.

Appellants contend that Dr. Gordon's independent evaluation of Price, which

indicated that Price's symptoms did not warrant further treatment, as well as the report by the medical reviewer concluding that the proposed surgery was not medically appropriate, support their argument that Price failed to meet his burden of proving that the additional treatment was reasonably necessary. However, the Commission chose not to rely on these medical opinions, noting that Dr. Gordon's evaluation was performed in August 2013, nearly a year prior to Dr. Bailey's examination, and that Price's condition continued to deteriorate during that intervening time period. With regard to the medical-review document, the Commission stated that it was extraordinarily brief, that it was limited to Price's medical records, that it did not involve a physical examination, and that it ignored facts in the record. The Commission further stated that Price's medical condition was unusual and that the treatment recommended by Dr. Bailey would not have a large presence in the medical literature and would not be familiar to those without specialized experience in shoulder-surgery revisions. The Commission has the duty of weighing conflicting medical evidence, and its resolution has the force and effect of a jury verdict. *Kroger Ltd. P'ship I v. Fee*, 2014 Ark. App. 577, 446 S.W.3d 628. Thus, the Commission's finding that the medical treatment recommended by Dr. Bailey, including surgery, was reasonable and necessary treatment for Price's compensable injury is supported by substantial evidence, and we affirm on this point.

In appellants' second point on appeal, they contend that the Commission ignored or improperly construed Arkansas Code Annotated section 11-9-514 by finding that Price was entitled to the additional medical treatment proposed by Dr. Bailey at their expense, even though Dr. Bailey is not Price's authorized treating physician. Arkansas Code Annotated

7

section 11-9-514 sets forth the procedures by which a claimant may change physicians. Pursuant to section 11-9-514(b), treatment or services furnished or prescribed by any physician other than the ones selected according to the statute, except emergency treatment, shall be at the claimant's expense.

While appellants are correct that the Commission failed to address the issue of whether they were responsible for treatment provided by Dr. Bailey under section 11-9-514(b), the record reveals that this issue was not raised before either the ALJ or the Commission. The Commission is charged with the duty to make and enter findings of fact and conclusions of law, and it must make findings on all of the facts that are relevant to the contested issue or issues such that we may determine whether the Commission has resolved those issues in conformity with the law. Ark. Code Ann. § 11-9-207(a)(5); *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 57 S.W.3d 735 (2001). Here, however, the prehearing order and the ALJ's opinion indicate that the only contested issues were (1) whether Price was entitled to additional medical treatment, including but not limited to the surgery proposed by Dr. Bailey; (2) whether Price was entitled to additional TTD benefits; and (3) attorney's fees. Furthermore, in their contentions, appellants specifically argued the following:

> The respondents contend that the claimant has received all reasonable and necessary medical treatment which has been prescribed for his compensable injury. The respondents contend that they have paid for all reasonable and necessary medical treatment and that no medical treatment has been controverted. The respondents approved a return appointment for the claimant to be evaluated by Dr. Kevin Rudder. The claimant now contends that respondents should pay for a surgical procedure being suggested by Dr. Mark. S. Bailey. The respondents contend that Dr. Kevin Rudder is the claimant's authorized treating physician and he has not recommended any additional surgery for the claimant. Claimant is not entitled to temporary total disability benefits and all appropriate benefits have been paid.

It is apparent from the above-stated contentions that appellants were challenging only whether the surgery proposed by Dr. Bailey was reasonable and necessary treatment for Price's compensable injury and whether Price was entitled to additional TTD benefits. There is no indication that appellants were objecting to treatment by Dr. Bailey pursuant to Arkansas Code Annotated section 11-9-514(b). The abstract reveals that appellants also failed to raise this argument at the hearing before the ALJ, nor did the ALJ address this issue in its opinion. In fact, while the ALJ noted that it did "not seem reasonable that the claimant would forgo additional medical treatment by his authorized treating physician," the ALJ went on to state that "[t]he question at hand in this case is whether Dr. Bailey's fifth surgery is reasonable, necessary, and related to the claimant's stipulated compensable right shoulder injury." In its majority opinion, the Commission also recognized that "[t]he question is whether Dr. Bailey's recommendation is reasonable and necessary." The Commission made no finding on whether appellants were responsible for paying for Dr. Bailey's treatment under the change-of-physician provisions in section 11-9-514.

In *St. Edward Mercy Medical Center v. Chrisman*, 2012 Ark. App. 475, 422 S.W.3d 171, this court declined to reverse and remand for further findings on the issue of whether the claimant had complied with the change-of-physician rules when the record did not reflect that the issue had been properly raised below. We noted that the issues to be litigated in that case did not mention the issue, and neither did the appellants' contentions. *Id*. at 7–8, 422 S.W.3d at 175–76. Because it is the claimant's responsibility to present an issue to the Commission and obtain a ruling, we held that the appellants' argument was not raised or ruled upon, and

SLIP OPINION

we declined to address the merits on appeal. *Id.* Similarly, in this case, we decline to address the merits of appellants' argument regarding section 11-9-514, as this issue was not raised or ruled upon below. We therefore affirm on appellants' second point on appeal.

In their third and final point on appeal, appellants contend that the Commission erred by finding that Price was entitled to additional TTD benefits. To receive TTD benefits, the claimant must prove by a preponderance of the evidence that he is within the healing period and is totally incapacitated from earning wages. *Union Drilling, Inc. v. Griffith*, 2015 Ark. App. 273. The healing period ends when the employee is as far restored as the permanent nature of the injury permits; thus, if the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition, the healing period has ended. *Id.* The determination of when the healing period has ended is a factual determination for the Commission. *Smallwood v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 466, 375 S.W.3d 747.

In finding that Price was entitled to additional TTD benefits from May 30, 2014, to a date yet to be determined, the Commission relied on Price's testimony that he was unable to successfully perform light-duty work for ADPT due to the pain and instability in his right shoulder, as well as on Dr. Bailey's report that noted a lack of function, significant pain, and instability in Price's shoulder at his May 30, 2014 visit. The Commission further found, based on Dr. Bailey's report, that Price would be unable to work at all for a short period of time following the surgery and that he would then be restricted to light-duty work for a longer period of time. Thus, the Commission found that Price was entitled to TTD benefits from

May 30, 2014, to a date yet to be determined after the completion of his surgery and his recovery.

Appellants contend that Price has reached the end of his healing period and rely on Dr. Gordon's August 21, 2013 evaluation. However, as the Commission noted, Price's condition continued to worsen after August 2013, and Dr. Gordon's opinion was of little significance by May 2014, based on Price's increased objective and subjective symptoms. While appellants also argue that Price has not shown a total incapacity to earn wages, the Commission credited Price's testimony that he is unable to perform even light-duty work due to his pain and reduced function in his right shoulder. Price's testimony as to his limitations was further supported by Dr. Bailey's findings during his physical examination of Price. Thus, there was substantial evidence to support the Commission's award of additional TTD benefits from May 30, 2014, to a date yet to be determined. Accordingly, we affirm the Commission's decision.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Robert H. Montgomery*, for appellant.

*Padgham Law Firm*, by: *Charles R. Padgham*, for appellee.