Cite as 2021 Ark. App. 279

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-18

BRONCO INDUSTRIAL SERVICES, LLC; GRAY INSURANCE COMPANY; AND CANNON COCHRAN MANAGEMENT SERVICES, INC.

APPELLANTS

V.

JAMES BROOKS

APPELLEE

**Opinion Delivered** June 2, 2021

APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION
[NO. G607100]

AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL

## BART F. VIRDEN, Judge

The Arkansas Workers' Compensation Commission granted benefits to appellee James Brooks for injuries he sustained to his left knee, arm, and shoulder following a work-related accident on June 6, 2016. The Commission also found that he proved entitlement to temporary total-disability (TTD) benefits from June 9, 2016, through November 3, 2017. The Commission found that Brooks failed to prove that he sustained a compensable mental injury. Appellants, Bronco Industrial Services, LLC; Gray Insurance Company; and Cannon Cochran Management Services, Inc. ("Bronco"), argue that substantial evidence does not support the Commission's decision that Brooks sustained compensable injuries to his left arm and shoulder and that the medical treatment he received was reasonably necessary. Brooks filed a cross-appeal arguing that the Commission erred in finding that he was not entitled to TTD benefits beyond November 3, 2017, and in finding that he failed to prove

that he sustained a compensable mental injury. We affirm both on direct appeal and on cross–appeal.

I. *Background*

Brooks testified that he worked for Bronco as a laborer tearing down and repairing mills. On June 6, 2016, Brooks was instructed to drive a pickup truck. When he reached his destination, he parked the truck on an incline. When he put his left foot on the ground and began getting out of the truck, the truck rolled backward and knocked him to the ground. Brooks testified that his whole left side was hurting and that his leg was bleeding. William Willman, a coworker, witnessed the incident.

Brooks went to the emergency room (ER) at Great River Medical Center in Blytheville after work that day because he claimed that the safety supervisor, to whom he had reported the injury, refused to take him or let him go for immediate medical treatment. The records indicate that Brooks's chief complaint at the ER was "knee/lower leg problem," that he also complained of thigh and lower back pain, and that the impression was "contusion." On June 9, Brooks saw Dr. Ryan Brenza, who noted that the location of Brooks's pain was his "left knee/left arm/chest." Dr. Brenza further reported that Brooks's "L side hurts, pain left thigh, left chest," that there was a small bruise visible in the hip area, and that his diagnosis was chest and leg contusions.

On June 10, Brooks saw his primary care physician, Dr. Sumner R. Cullom, for a second opinion. She noted that Brooks described an injury in which he had hurt his left shoulder, left elbow, and left lower leg. The examination showed "cellulitis of left lower leg with an abrasion left knee and left elbow." Dr. Cullom assessed, among other things,

2

contusions on Brooks's left elbow and chest. On June 23, Dr. Cullom reported that Brooks's left arm and hand were negative for fracture but "continue to be swollen and sore to touch." She assessed contusions to Brooks's left shoulder, left forearm, and left hand. On June 29, Dr. Cullom noted "left arm and hand swelling and painful" and assessed "contusion/hematoma of the left forearm." On July 19, Dr. Cullom wrote, "Left forearm is still swollen and tender" and assessed "contusion of left forearm."

On July 20, Dr. Brenza reported that Brooks's left arm would swell when he worked but also noted that Brooks was not working because he had been laid off. Dr. Brenza wrote that Brooks could return to work but was restricted from lifting more than ten pounds and should "await ortho evaluation before full work clearance." Brooks testified that he did return to work for Bronco for a day or two but that all he could do was sit in a tool shed.

On September 9, Brooks consulted with an orthopedist, Dr. Brian G. Dickson, who noted edema of Brooks's left arm and referenced a "crush injury." He referred Brooks to Comprehensive Pain Specialists in Blytheville. On January 5, 2017, Dr. Dickson reported that Brooks's left arm still bothered him and that there was a bit of guarding. Dr. Dickson reported that he suspected that Brooks had reflex sympathetic dystrophy (RSD) and referred him for therapy and suggested that he see a hand surgeon.

On March 31, Brooks saw Dr. William F. Blankenship at OrthoArkansas for an independent medical evaluation (IME). He examined Brooks's arm and shoulder and reported that the major cause of the pain was a contusion on Brooks's left upper extremity resulting from being struck by a truck. Dr. Blankenship wrote that it was possible that Brooks had RSD.

Brooks was directed by Bronco's insurance carrier to see Dr. Carlos Roman, an RSD specialist. On July 17, Brooks saw Dr. Roman to obtain another IME. Dr. Roman noted that Brooks's arm, which was in a sling, was swollen and that Brooks may have kinesiophobia, which is a fear of movement, with respect to his extremity. Dr. Roman ordered a bone scan to confirm a possible diagnosis of RSD. On August 17, Dr. Roman's notes indicate a diagnosis of complex regional pain syndrome, or RSD, of the left upper extremity for which Dr. Roman gave Brooks a stellate ganglion block. On August 25, Dr. Roman reported that the bone scan "was positive in uptake for reflex sympathetic dystrophy of the left upper extremity." Dr. Roman gave Brooks additional stellate ganglion blocks on September 14 and 25, after which he saw some improvement in Brooks's hand movement. On November 3, Dr. Roman released Brooks with no restrictions.

On January 10, 2018, Brooks saw a licensed clinical social worker and a psychiatrist. Brooks, who testified that he has had mental–health issues since the early 1990s, was diagnosed with "Major Depressive Disorder, Single Episode, Moderate" and "post–traumatic stress disorder, unspecified." It was noted that both diagnoses "became apparent after reportedly becoming injured at Bronco Industrial."

On February 13, Brooks saw Dr. Dickson, who noted that Brooks's arm still bothered him. He reported swelling of his shoulder, elbow, and hand and noted that Brooks's arm was back in a sling. Dr. Dickson again noted a possible diagnosis of RSD and referred Brooks to Dr. G. Thomas Frazier, a hand surgeon. Dr. Frazier stated in a note dated February 22 that his medical opinion was that Brooks "should remain out of work until 04/02/2018."

The administrative law judge (ALJ) found that Brooks had sustained compensable injuries to his left knee, arm, and shoulder and that he had proved that he sustained a mental injury. The ALJ also found that Brooks was entitled to TTD benefits from June 9, 2016, through April 2, 2018. The Commission affirmed in part as modified and reversed in part. The Commission found that Brooks sustained compensable injuries to his left knee, arm, and shoulder and that he was entitled to TTD benefits from June 9, 2016, through November 3, 2017. The Commission found that Brooks did not prove a compensable mental injury. Bronco and Brooks filed notices of appeal and cross-appeal, respectively.

II. *Standard of Review*

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Ark. Dep't of Parks & Tourism v. Price*, 2016 Ark. App. 109, 483 S.W.3d 320. This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id*. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id*. We reverse the Commission's decision only if we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Id*. Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id*.

5

III. *Discussion*

A. Bronco's Direct Appeal

1. *Compensability of left arm and shoulder injuries*

Arkansas Code Annotated section 11-9-102(4)(A)(i) (Repl. 2012) provides that a "compensable injury" means an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence. *Id.* A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). The employee has the burden of proving by a preponderance of the evidence that he or she sustained a compensable injury. Ark. Code Ann. § 11-9-102(4)(E)(i).

Bronco argues that, at the ER on the day of the incident, Brooks complained only of an injury to his left knee and leg and voiced no complaints regarding his left arm and shoulder. Bronco points out that Brooks's blood pressure was taken on his left arm multiple times in the ER but that there was no record of left arm pain or an abrasion. Bronco argues that the Commission erred in finding that Dr. Cullom's June 10 note of an abrasion to Brooks's left elbow was an objective medical finding because it was four days after the work-related injury and after he had been seen at the ER. Moreover, Bronco notes a discrepancy in the records when Dr. Cullom noted an "abrasion left knee and left elbow" but then described only one abrasion with no indication whether it was the one on the knee or the

6

elbow. Bronco argues that, although Dr. Brenza noted a description of the injury that included Brooks's left arm, no objective findings were noted. According to Bronco, Brooks provided such an exaggerated history of "being pinned against a wall" after the truck had "jumped out of park," Dr. Cullom's finding of an abrasion that was missed by so many other medical-care providers should not be believed. Bronco also argues that it was not until June 23 that Dr. Cullom diagnosed a contusion to Brooks's shoulder after noting that it was swollen and sore. Bronco argues that the appearance of these findings over two weeks after the June 6 incident shows the lack of causal connection to the work-related injury.

It is within the Commission's province to weigh all of the medical evidence, to determine what is most credible, and to determine its medical soundness and probative force. *USA Truck, Inc. v. Webster*, 2020 Ark. App. 226, 599 S.W.3d 368. We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *Id*. In weighing the evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Id*. But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *Id*.

The Commission apparently believed Brooks's testimony that his entire left side hurt after the truck had knocked him to the ground. Dr. Brenza's records indicate that Brooks's left arm was hurting only three days after having been seen at the ER. In finding that Brooks proved that he sustained compensable injuries to his left arm and shoulder, the Commission pointed to objective findings by Drs. Brenza, Cullom, and Dickson that included abrasions, contusions, and swelling involving Brooks's left upper extremity. *Cienfuegos-Mendoza v.*

7

*Dobbs Coating Sys.*, 2011 Ark. App. 214 (recognizing that contusions, abrasions, and swelling are objective findings). Bronco characterizes these objective findings as vague and nondescript and relies on minor discrepancies and oddities in the medical records, but the weight and interpretation of medical evidence are matters for the Commission. *Cienfuegos-Mendoza, supra*. We conclude that substantial evidence supports the Commission's decision that Brooks proved compensable injuries to his left arm and shoulder, in addition to his admittedly compensable left-knee injury.

2. *Reasonably necessary medical treatment*

Arkansas Code Annotated section 11-9-508(a)(1) (Supp. 2019) requires employers to promptly provide such medical services as are reasonably necessary in connection with the injury received by the employee. The injured employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonably necessary. *Wise v. Village Inn*, 2015 Ark. App. 406, 467 S.W.3d 186. If an injury is compensable, then every natural consequence of that injury is also compensable. *Hubley v. Best Western–Governor's Inn*, 52 Ark. App. 226, 916 S.W.2d 143 (1996). Reasonable and necessary medical treatment includes that necessary to accurately diagnose the nature and extent of the compensable injury; to reduce or alleviate symptoms resulting from the injury; to maintain the level of healing achieved; or to prevent further deterioration of the damage produced by a compensable injury. *Webster, supra*. What constitutes reasonable and necessary treatment is a factual question for the Commission. *Id.*

Bronco argues that Brooks had been diagnosed with other conditions that could explain his complaints of pain to his upper extremities. Bronco also points to Dr. Roman's

report suggesting that Brooks's failure to use his arm could be the cause of its swelling. Bronco takes issue with the fact that Dr. Roman referred to a bone scan for his diagnosis of RSD, but the bone scan was not introduced into evidence, and the diagnosis was not confirmed by Dr. Blankenship. Bronco contends that the RSD diagnosis without a bone scan is not an objective finding; rather, Dr. Roman's report is merely hearsay.[1] Bronco cites *Parson v. Arkansas Methodist Hospital*, 103 Ark. App. 178, 287 S.W.3d 645 (2008), for the proposition that a doctor's diagnosis, without more, does not constitute an objective finding.

Bronco's reliance on *Parson, supra*, is misplaced. In that case, a doctor had diagnosed Parson with a concussion but had relied on subjective factors, such as neuropsychology testing and Parson's own complaints. Here, Dr. Roman ordered a bone scan, the results of which he stated contained objective findings to support his diagnosis of RSD. There was no need for this diagnosis to be "confirmed" by another doctor, yet the Commission gave "significant evidentiary weight" to the opinions of Drs. Roman, Dickson, and Blankenship, with the latter two noting the possible diagnosis of RSD. We conclude that there was substantial evidence to support the Commission's finding that Brooks's medical treatment was both reasonable and necessary for treatment of his compensable injuries.

## B. Brooks's Cross-Appeal

### 1. *Entitlement to TTD benefits beyond November 3, 2017*

Temporary total disability for unscheduled injuries is that period within the healing period in which a claimant suffers a total incapacity to earn wages. *Hope Sch. Dist. v. Wilson*,

---

[1] We note that the Commission is not bound by technical rules of evidence. Ark. Code Ann. § 11-9-705(a)(1) (Supp. 2019).

9

2011 Ark. App. 219, 382 S.W.3d 782. The healing period is that period for healing of an accidental injury that continues until an employee is as far restored as the permanent character of his injury will permit, and the healing period ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve the condition. *Id*. The determination of when the healing period has ended is a factual determination for the Commission. *Id*.

Brooks argues that the Commission erred in relying on Dr. Roman's opinion to limit his receipt of TTD benefits because Dr. Roman only estimated that he "would be" at maximum medical improvement (MMI) based on his condition the last time Dr. Roman saw him, which was two months earlier. Also, Dr. Roman wrote, "[Brooks] may have been work restricted from the time of the injury and because of his nonuse of the left hand for a period of time, but I would have difficulty in saying just how long." Citing *Bingle v. Quality Inn*, 96 Ark. App. 312, 241 S.W.3d 271 (2006), Brooks argues that Dr. Roman "constructively" released him based on an estimation. Brooks contends that he was still in his healing period because he was referred to an orthopedic surgeon for further treatment. Dr. Dickson then referred him for additional physical therapy and pain management and sent him to a hand surgeon. Also, Dr. Frazier opined that his healing period would not end until April 2, 2018.

We disagree with Brooks that Dr. Roman constructively released him based on an estimation because, although Dr. Roman initially used the phrase "would be," he later clearly opined that Brooks had reached MMI on November 3, 2017, the date of the letter. Dr. Roman wrote, "*At this time*, I would put [Brooks] at MMI[,] and I would recommend

that he go back to work without restrictions." (Emphasis added.) It was for the Commission to reconcile any perceived conflict in Dr. Roman's report. Moreover, the Commission specifically found that Dr. Roman's opinion was entitled to "more evidentiary weight" than Dr. Frazier's note opining that Brooks remained in his healing period through April 2, 2018. The Commission simply chose to believe Dr. Roman over Dr. Frazier. Given our standard of review, we will not disturb the Commission's finding. We hold that there was a substantial basis for the Commission's denial of relief in the form of TTD benefits beyond November 3, 2017.

## 2. *Compensability of mental injury or illness*

A mental injury or illness is not a compensable injury unless it is caused by physical injury to the employee's body, and shall not be considered an injury arising out of and in the course of employment or compensable unless it is demonstrated by a preponderance of the evidence. Ark. Code Ann. § 11-9-113(a)(1) (Repl. 2012). To be compensable, the physical injury must both precede and cause the mental injury. *Travelers Ins. Co. v. Smith*, 329 Ark. 336, 947 S.W.2d 382 (1997).

Brooks argues that the Commission erred in finding that he failed to prove a compensable mental injury. He was seen by a licensed counselor and a psychiatrist, who diagnosed depression and PTSD, the onset of which was specifically related to his work-related injury. Brooks contends that the report also noted that his problem to be addressed was "depression adjustment to injury and life change." He further argues that the Commission erred in relying on *Amlease, Inc. v. Kuligowski*, 59 Ark. App. 261, 957 S.W.2d

715 (1997), because that case involved a mental injury due to guilt over injuries the claimant caused to another person.

The Commission found that, although Brooks was diagnosed with depression and PTSD, the evidence did not demonstrate that the diagnoses were causally related to Brooks's compensable physical injuries. Rather, his mental injury was related to a confrontation that Brooks had with his supervisor shortly after the injury, stress related to his legal representation, and trust issues as a result of living in a "high crime area." The Commission also noted that Brooks had testified that he sought mental-health treatment because of "flashbacks" but found that they were not *causally* related to his compensable injuries. We note that the part of the medical record referencing "depression adjustment to injury and life change" is found under a section entitled "Client Self Assessment." Further, the Commission likely cited *Amlease*, *supra*, only for the proposition that the mental injury must be causally related to the claimant's own injuries, and not someone else's injuries or other external factors, such as environmental stress and preexisting trust issues. We hold that reasonable minds could agree with the Commission's decision that Brooks's depression and PTSD were not causally related to his compensable injuries.

## IV. *Conclusion*

We hold that there is substantial evidence to support the Commission's decision that Brooks proved that injuries to his left arm and shoulder are compensable and that the medical treatment he received was reasonably necessary. Thus, we affirm on direct appeal. We further hold that the Commission did not err in its finding that Brooks reached MMI on November 3, 2017, and thus was not entitled to further TTD benefits after that date.

Finally, the Commission's decision displays a substantial basis for its denial of relief as to Brooks's mental injury. Therefore, we affirm on cross-appeal.

Affirmed on direct appeal; affirmed on cross-appeal.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Barber Law Firm PLLC*, by: *Karen H. McKinney*, for appellants/cross-appellees.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellee/cross–appellant.