Cite as 2021 Ark. App. 468

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-21-167

| | |
|---|---|
| NORTH HILLS SURGERY CENTER AND RISK MANAGEMENT RESOURCES<br><br>APPELLANTS<br><br>V.<br><br>CHELSEA OTIS<br><br>APPELLEE | **Opinion Delivered** December 1, 2021<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br><br>[NO. G607184]<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

North Hills Surgery Center (North Hills) appeals the Arkansas Workers' Compensation Commission's (the Commission's) decision entered in favor of Chelsea Otis. On appeal, North Hills argues that the Commission erred by finding that Otis is entitled to a change of physician, additional medical treatment, and a 7 percent impairment rating to the body as a whole. We affirm.

Otis was a certified nursing assistant for North Hills. On December 21, 2015, she sustained an injury to her back while prepping a patient for surgery. Otis was twenty-eight years old at the time. She immediately reported the incident, and North Hills accepted the injury as compensable.

For treatment of her injury, Otis initially saw Dr. Konstantin Berestnev, an occupational medicine specialist, and he requested an MRI. The imaging report of Otis's

January 14, 2016 MRI indicated a broad-based disc bulge at L4–5, and Dr. Berestnev referred Otis to a pain specialist, Dr. Jason Holt. Dr. Holt recommended an epidural steroid injection.

On July 27, 2016, due to Otis's continued complaints of back pain, Dr. Holt referred Otis to a neurosurgeon, Dr. Luke Knox. Dr. Knox's August 1 clinic note stated, "Neurologically, I could pick up no evidence of motor deficit." He noted, however, that she had "somewhat of a hyperlordotic spine with an element of diminished range of motion in both flexion and extension and lateral bending." His clinic note also referenced the L4–5 disc protrusion in the January 2016 MRI, and he noted that an x-ray demonstrated transitional segment anatomy at L4–5. Dr. Knox placed Otis on activity and lifting restrictions, and he noted that if Otis could avoid surgery, he believed she would "do better in the long-run." He recommended a two-month follow-up appointment.

On September 20, Otis again saw Dr. Knox. In the record for the visit, Dr. Knox noted that he had again reviewed Otis's MRI and that it demonstrated a significant central disc herniation at L4–5. He also noted bilateral muscle spasms. He recommended a two-month follow-up appointment.

On December 5, Otis saw another neurosurgeon, Dr. Kyle Mangels, with her nurse case manager for an independent medical examination. Dr. Mangels reviewed Otis's January 2016 MRI, and he reported mild degenerative changes with a disc protrusion and tear at L5–S1. He noted that a radiologist had referred to the same disc as L4–5. He recommended a lumbar discogram before surgery.

On February 17, 2017, Otis had another MRI at Dr. Knox's request. The imaging report indicated mild degenerative changes and a central disc protrusion at L4–5. On February 24, Otis saw Dr. Knox for a follow-up appointment. Dr. Knox's report states that Otis's active problems include a herniated disc, and his clinic note references the previous central disc bulge.

On May 22, Dr. Knox notified North Hills that Otis was pregnant and that her pregnancy precluded further diagnostic studies. He stated that he is "convinced [Otis's pain is] due to an L4–5 herniated intervertebral disc." Dr. Knox determined that Otis qualified for a 7 percent permanent partial-disability rating to the body as a whole according to the American Medical Association's *Guides to the Evaluation of Permanent Impairment*. North Hills accepted the impairment rating.

Following childbirth, on January 19, 2018, Otis saw Dr. Knox and continued to complain of back pain. She had another MRI on January 31. On February 9, Otis saw Dr. Knox again. His clinic note states that he reviewed Otis's MRIs dating back to 2016 and that there was no significant change. He recommended that Otis undergo a functional-capacity evaluation to define her permanent restrictions and that she return to him for a disability rating following the test.

On February 21, Otis had a functional-capacity evaluation. The evaluation indicated that Otis had the ability to perform work in the medium classification, as defined by the United States Department of Labor.

On February 27, Otis returned to Dr. Knox. In his clinic note, Dr. Knox stated that Otis had completed her evaluation with a 54 of 54 consistency measures within expected

limits and that she could return to work in a medium classification. He noted that she had previously been assigned a 7 percent permanent-partial disability rating. Dr. Knox explained that he had discussed surgery with Otis but that she elected to try to avoid it. He suspected that Otis "may very well require surgical endeavors at some point in the future, but that would be defined [at the] time of follow-up."

On November 21, Otis had another MRI at the request of Dr. Knox, and the imaging report indicated a broad-based central disc protrusion at L5-S1. Dr. Knox referred Otis to another neurosurgeon, Dr. Larry Armstrong.

On January 28, 2019, Otis saw Dr. Armstrong. Dr. Armstrong's notes indicate that Otis suffered from a lumbar degenerative disc disease and an annular tear at L5-S1. He recommended that she obtain a second opinion for surgical intervention from Dr. Quoc-Anh Thai.

In February 2019, Otis petitioned the Commission for a change of physician to see Dr. Thai, and on March 12, the Commission granted Otis's request. She saw Dr. Thai on April 11, and he reviewed her November 2018 MRI. In his report, Dr. Thai noted Otis's transitional anatomy and found that L4-5 had disc dehydration, mild degeneration, and mild protrusion but no acute herniation. Dr. Thai further concluded that surgery would not confer Otis "much benefit." He explained that he did not see an acute injury in the MRI, but "defer[ed] that to prior neurosurgeons who have seen her in the past" and did not "comment on anything that pre-dates this visit." Thereafter, North Hills requested that Dr. Steven Nokes, a radiologist, review Otis's medical records.

On July 17, Dr. Nokes informed North Hills that he agreed with Dr. Thai's opinion of Otis's MRIs. He stated that Otis's MRIs demonstrate chronic degenerative change at L5–S1 without an acute abnormality. After receiving Dr. Nokes's opinion, North Hills controverted Otis's claims for additional medical treatment and a 7 percent impairment rating.

On October 23, the administrative law judge (ALJ) entered a prehearing order. In the order, the ALJ stated that the parties had agreed to litigate the following three issues: (1) whether Otis is entitled to additional medical treatment, (2) whether she is entitled to a 7 percent impairment rating to the body as a whole, and (3) attorney's fees.

On January 14, 2020, the ALJ held a hearing, and on May 11, the ALJ entered an order finding in favor of Otis on all three issues. As to the impairment rating, the ALJ found that Dr. Knox had been steadfast in his opinion that Otis is entitled to a 7 percent impairment rating and that Dr. Knox had noted her degenerative condition in his August 2016 report. The ALJ specifically found that Dr. Knox was in the best position to opine about Otis's condition and pointed out that Dr. Thai had deferred his opinion to prior physicians because he had not examined Otis until three years following the injury. As to the additional medical treatment, the ALJ again relied on its finding that Dr. Knox is in the best position to opine about Otis's condition because he had evaluated and treated her for several years.

On June 2, North Hills appealed the ALJ's decision to the Commission. In the notice of appeal, North Hills stated that it appealed the ALJ's findings that Otis had established entitlement to (1) additional medical treatment in the form of a follow-up visit with Dr.

Knox, (2) a 7 percent impairment rating to the body as a whole, and (3) attorney's fees. On February 9, 2021, the Commission affirmed and adopted the ALJ's decision.[1] This appeal followed.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The Commission has the duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). If reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

On appeal, North Hills first argues that the Commission's decision that Otis is entitled to a change of physician to Dr. Knox is an error as a matter of law and is not supported by substantial evidence because Otis did not establish a compelling reason or circumstance for the change as required by Arkansas Code Annotated section 11-9-514(a)(1) (Supp. 2021). However, we cannot address the merits of North Hills's argument because it is not preserved for our review.

---

[1]Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.*

To preserve an issue for appellate review in a workers'-compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling. *See Ark. Dep't of Parks & Tourism v. Price*, 2016 Ark. App. 109, 483 S.W.3d 320; *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, 422 S.W.3d 171; *Goodwin v. Phillips Petroleum Co.*, 72 Ark. App. 302, 37 S.W.3d 644 (2001). In *Price*, this court declined to address the appellant's argument concerning the change-of-physician rules when the record did not show that the issue was raised or ruled on. *Price*, 2016 Ark. App. 109, 483 S.W.3d 320 (citing *St. Edward*, 2012 Ark. App. 475, 422 S.W.3d 171). The prehearing order and the ALJ's opinion did not reflect an issue concerning the change-of-physician rules; thus, the Commission did not issue a ruling concerning the rules. *Id.* We stated that it was apparent that the appellant had challenged only whether the surgery proposed by a physician was reasonable and necessary for the compensable injury and that there was no indication that the appellant had objected to treatment by that physician under the change-of-physician rules. *Id.*

Similarly, in this case, the prehearing order and the ALJ's opinion indicate that the only contested issues were whether Otis was entitled to (1) additional medical treatment, (2) a 7 percent impairment rating, and (3) attorney's fees. And North Hills lists only those three issues in its notice of appeal to the Commission. As in *Price*, it is apparent that North Hills challenged only whether the follow-up visit was reasonable and necessary for the compensable injury, and North Hills did not object to treatment by Dr. Knox pursuant to the change-of-physician rules in section 11-9-514. We thus decline to address the merits of North Hills's argument on this point.

7

North Hills next argues that the Commission's decision that Otis is entitled to additional medical treatment is not supported by substantial evidence. North Hills acknowledges Dr. Knox's conclusion that Otis may need surgery in the future, but it argues that his statement is speculative, and it points out that Dr. Knox did not indicate whether the surgery is necessary to treat the work-related injury or a degenerative condition. North Hills relies on Dr. Thai's recommendation that Otis did not need additional treatment.

Arkansas Code Annotated section 11-9-508(a) provides that an employer must provide for an injured employee medical services reasonable and necessary in connection with the injury received by the employee. It is the employee's burden to prove by a preponderance of the evidence that medical treatment is reasonable and necessary. *Goyne v. Crabtree Contracting Co.*, 2009 Ark. App. 200, 301 S.W.3d 16. What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of the medical evidence and to translate it into findings of fact. *Wise v. Vill. Inn*, 2015 Ark. App. 406, 467 S.W.3d 186.

In this case, the Commission's decision to award Otis additional medical treatment is supported by substantial evidence. In his February 27, 2018 note, Dr. Knox indicated that Otis may need surgery and that the need should be assessed at a follow-up visit, and the Commission awarded Otis additional medical treatment in the form of a follow-up visit and diagnostic testing—not surgery. Even though Dr. Thai did not see an acute injury, he deferred to prior treating neurosurgeons. Resolving the conflicting medical evidence, making credibility terminations, and deciding what weight to give to particular pieces of evidence is within the Commission's province. *Shiloh Nursing & Rehab, LLC v. Lawson*,

2014 Ark. App. 433, 439 S.W.3d 696. Accordingly, we find no error by the Commission on this point.

North Hills next argues that the Commission's decision that Otis is entitled to a 7 percent impairment rating is an error as a matter of law and not supported by substantial evidence because the rating is not supported by objective and measurable findings. It acknowledges that the Commission relied on Dr. Knox's assignment of a 7 percent impairment rating, but it claims that his medical reports do not indicate an acute injury and that other physicians did not observe an acute injury. North Hills further asserts that Otis's medical records show degenerative and congenital issues, and it argues that the physicians treated Otis based only on her complaints of pain.

"Permanent impairment" has been defined as "any permanent functional or anatomical loss remaining after the healing period has ended." *Main v. Metals*, 2010 Ark. App. 585, at 9, 377 S.W.3d 506, 511. Any determination of the existence or extent of physical impairment must be supported by objective and measurable findings. *Dillard's, Inc. v. Johnson*, 2010 Ark. App. 138, 374 S.W.3d 92. "Objective findings" are those that cannot come under the voluntary control of the patient and specifically exclude complaints of pain, straight-leg-raising tests, and range-of-motion tests. Ark. Code Ann. § 11-9-102(16)(A) (Supp. 2021); *Vangilder v. Anchor Packaging, Inc.*, 2011 Ark. App. 240.

In this case, we hold that the Commission's decision that Otis is entitled to a 7 percent impairment rating is supported by substantial evidence. Otis's MRIs show a disc abnormality at L4-5/L5-S1. Upon examining Otis and reviewing her MRIs, Dr. Knox assessed Otis at a 7 percent impairment rating using the *AMA Guides*. Dr. Knox had treated

9

her since August 2016 and had previously noted her degenerative and congenital issues. The Commission is authorized to decide which portions of the medical evidence to credit and to translate this medical evidence into a finding of permanent impairment. *See Ark. Dep't of Hum. Servs. v. Shields*, 2018 Ark. App. 247, 548 S.W.3d 208; *Firestone Bldg. Prods. v. Hopson*, 2013 Ark. App. 618, 430 S.W.3d 162. Given these circumstances, we find no error by the Commission on this point. We therefore affirm the Commission.

Affirmed.

BARRETT and WHITEAKER, JJ., agree.

*Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, by: *Grace K. Johnson*; and *Bassett Law Firm LLP*, by: *Tod C. Bassett*, for appellants.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellee.