Cite as 2025 Ark. App. 575

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-25-148

| | |
|---|---|
| DARDANELLE PUBLIC SCHOOLS AND ARKANSAS SCHOOL BOARDS ASSOCIATION | Opinion Delivered December 3, 2025 |
| | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. H305182] |
| ANDREA EWTON | AFFIRMED |

**BART F. VIRDEN, Judge**

Dardanelle Public Schools (DPS) and its insurance carrier, Arkansas School Boards Association (ASBA), appeal the Commission's decision that Andrea Ewton suffered a compensable injury because she was within the scope of her employment when the injury occurred. We affirm.

## I. *Relevant Facts*

Andrea Ewton filed a workers'-compensation claim for injuries to her knee and ankle she sustained while working for DPS. Ewton asserted that she was eligible for temporary total-disability benefits from August 16, 2023, to a date yet to be determined, reasonable and necessary medical treatment, and attorney's fees. DPS controverted the claim, contending that she was on a personal errand and not performing any employment services or advancing her employer's interest at the time of the injury.

A hearing was held on August 1, 2024. At the hearing, Ewton testified that on August 15, 2023, she was working as a substitute custodian at the Dardanelle intermediate school. When she arrived on campus, she went into the main office and filled out her time sheet, clocked in, and was given keys by the school secretary, Becca Manatt. She testified that around 8:15 a.m., while she was on the clock, she walked to her car through the school parking lot to get a bottle of water and keys she needed to clean the agricultural and electronics buildings. Ewton explained that Manatt had given her the wrong keys that morning, but she had a set in her car that would open those buildings. On the way, she stepped off the curb and broke her ankle and injured her knee. She stated that she reported the injury to both Manatt and the school nurse, April McGuire. Ewton was cross-examined about an earlier statement in her deposition that when she arrived at the intermediate school office, she went to get the keys for the gym and the technology lab. She explained that Manatt was there, but she got the keys from McGuire. Ewton did not recall speaking with the claims supervisor for the ASBA. Ewton testified that she had not worked since the date of the accident.

Becca Manatt testified that she did not remember if she gave Ewton keys the morning of the accident, but she remembered that when Ewton came into the office after she had been injured, she referred Ewton to the school nurse. She said that generally she did not give out keys, and the custodians kept the keys to the technology building and the gym in their closet; however, there were times that she had given out keys.

2

April McGuire testified that on the day of the accident, Ewton came into her office, and she put ice on Ewton's ankle. McGuire explained that Ewton told her that "she had been walking out to her car to get a drink and slipped off the curb." McGuire contacted the claims supervisor for the ASBA, Misty Thompson, to let her know about the accident. McGuire remembers telling Ewton that she was not sure that her injury would be covered by workers' compensation.

Thompson testified that on the morning of August 15, 2023, she received a call from DPS, which was recorded. According to the transcript of the recorded phone call, Ewton explained that at the time of the accident, she was walking to her car to get a bottle of water she had left there. When Thompson asked her if there was any other purpose for going to her car, she replied, "No, ma'am."

On August 12, 2024, the administrative law judge's (ALJ's) opinion was entered. In it, the ALJ determined that Ewton failed to prove by a preponderance of the evidence that she suffered a compensable injury to her left knee and right ankle because she was not performing employment services at the time of her injury. The ALJ did not find credible Ewton's testimony that she had returned to her car to get a set of keys and cited Ewton's shifting story about who had given her keys that morning. The ALJ noted that Ewton's explanation about why she was going to her car changed from getting a drink to getting keys necessary to do her job. The ALJ also found that although Ewton claimed she had not worked since the date of the accident, her unemployment application showed that she had

worked full time for Dardanelle Nursing & Rehabilitation from October 5, 2023, to February 22, 2024. Ewton appealed to the Full Commission (Commission).

On January 16, 2025, the Commission entered the decision reversing the ALJ, determining that Ewton had proved by a preponderance of the evidence that she sustained a compensable injury. The ALJ found that Ewton was entitled to temporary total-disability benefits beginning August 16, 2023, through June 22, 2024, and her attorney was entitled to fees, plus an additional $500 for prevailing on appeal. The Commission credited Ewton's testimony that she obtained keys from Manatt when she arrived on campus. The Commission also found credible Ewton's testimony that she was on the clock and on campus at the time the accident, and she was on her way to her car to get keys to the building and a bottle of water when she fell and injured herself. The Commission additionally found that Ewton had proved that the injury was compensable because she testified that at the time of the accident, she was on the clock, not on a break, and on campus.

DPS and ASBA timely filed a notice of appeal, and this appeal followed.

II. *Standard of Review*

When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Ark. Dep't of Parks & Tourism v. Price*, 2016 Ark. App. 109, 483 S.W.3d 320. We must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* We reverse the Commission's decision only if

we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Bronco Indus. Servs., LLC v. Brooks*, 2021 Ark. App. 279, 625 S.W.3d 753.

### III. *Discussion*

For its sole point on appeal, DPS contends that the Commission erred in finding that Ewton offered substantial evidence that she sustained a compensable injury. Specifically, DPS argues that she did not prove the accident occurred when she was within the scope of her employment because she gave inconsistent testimony regarding her purpose for going to her car. We disagree.

Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 2023) defines a compensable injury as "[a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. For an accidental injury to be compensable, it must arise out of and in the course of employment. *Id.* A compensable injury does not include an injury incurred when employment services were not being performed. *Id.* § 11-9-102(4)(B)(iii). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Cont'l Constr. Co. v. Nabors*, 2015 Ark. App. 60, 454 S.W.3d 762. We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). The test is whether the injury occurred within the time and space

5

boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest, either directly or indirectly. *Id.* Moreover, whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Ctrs. for Youth & Families v. Wood*, 2015 Ark. App. 380, 466 S.W.3d 422.

DPS compares the instant case to *Fulbright v. St. Bernard's Medical Center*, 2016 Ark. App. 417, 502 S.W.3d 540, in which this court affirmed the Commission's determination that the appellant, a laundry aide for St. Bernard's, was not within the scope of her employment when she tripped and fell returning from a smoke break. The claimant testified that "she was indirectly benefiting her employer by getting something to eat so that she could have energy to do the physical labor associated with her work." 2016 Ark. App. 417, at 2, 502 S.W.3d at 542. The Commission found that she was on a personal errand; thus, the injury was not compensable. The difference between Fulbright and the instant case is that here, aside from the bottle of water, Ewton was also retrieving keys to open the buildings so she could perform her job duties; thus, Fulbright is inapplicable here.

DPS cites several cases along these lines for support. In *Hill v. LDA Leasing, Inc.*, 2010 Ark. App. 271, 374 S.W.3d 268, this court affirmed the denial of benefits when the employee, who was returning from the restroom and stopped at a vending machine to buy a snack, slipped and fell. In *Black v. First Step, Inc.*, 2014 Ark. App. 341, this court affirmed the Commission's decision that a personal-care aide who stopped to buy food for her client was acting outside the scope of her employment because buying food was not one of her job

duties. In *Campbell v. Randal Tyler Ford Mercury, Inc.*, 70 Ark. App. 35, 13 S.W.3d 916 (2000), this court affirmed the Commission's decision that a man who had taken work home with him on the weekend and was on his way to work when he died in a car accident was not acting within the scope of his employment because he was not working when he died. In *McKinney v. Trane Co.*, 84 Ark. App. 424, 143 S.W.3d 581 (2004), this court affirmed the Commission's decision that appellant's accident, which occurred when he was getting a soda to go outside for his smoke break, was not compensable even though he was under an obligation to "report anything askew in the workplace had he observed it during that time."

The pattern in each of these cases only reinforces that this court affirms the Commission when the credibility of the witness is the issue on appeal. It is well settled that questions of witnesses' credibility and the weight to be given their testimony are within the exclusive province of the Commission. *Sheridan Sch. Dist. v. Wise*, 2021 Ark. App. 459, 637 S.W.3d 280. Here, Ewton testified at the hearing that she was getting keys from her car to clean the buildings pursuant to her job duty. DPS claims that the "ALJ accurately noted that he did not find Ms. Ewton's testimony that she was going to her car to get keys to be credible." We give no weight to the ALJ's findings whatsoever. *Bean v. Reynolds Consumer Prods.*, 2022 Ark. App. 276, 646 S.W.3d 655; *Multi-Craft Contractors, Inc. v. Yousey*, 2018 Ark. 107, 542 S.W.3d 155; *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989); *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979). Ewton's inconsistent earlier statements are for the Commission to weigh, and once the Commission has made its decision on issues of credibility, this court is bound by that decision. *Id.*

Affirmed.

G<small>LADWIN</small> and H<small>ARRISON</small>, JJ., agree.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellants.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellee.